### STATE v. FRANK CEPHUS.

(Filed 2 March, 1955.)

**1. Criminal Law § 54f—**

Every defendant has the right to have the jury polled in order to determine whether the verdict is unanimous, but this right must be exercised before the jury is discharged or it is waived.

**2. Assault § 14b—**

The charge of the court construed contextually *is held* to have properly instructed the jury that the plea of self-defense was available to defendant if defendant did not provoke the assault and if he did not use more force than reasonably appeared to be necessary to repel an assault or threatened assault against him.

**3. Criminal Law § 53b—**

An instruction which has the effect of charging the jury that if it found beyond a reasonable doubt from the evidence that defendant was guilty of the offense charged in one indictment, they should find defendant guilty of the offense charged in the other indictment consolidated for trial, is error, since the burden rests upon the State in both cases and the weight and credibility of the evidence is for the jury alone to determine.

**4. Criminal Law § 81c (4)—**

Where defendant is convicted under both indictments consolidated for trial, and separate, equal and concurrent sentences are imposed in each case, an error in the charge relating to one case only is harmless.

APPEAL by defendant from *Fountain, S. J.,* 1954 Special Term, EDGE-COMBE.

Criminal prosecutions on two bills of indictment, Nos. 1696 and 1697. In 1696 the defendant is charged with an assault with a deadly weapon, to wit: a knife, upon Lester Johnson. In No. 1697 he is charged with an

assault with a deadly weapon, to wit: a knife, on Charlie Taylor. The cases were consolidated for trial over defendant's objection.

The State offered the testimony of three witnesses. Lester Johnson testified in substance that on 25 September, 1953, he went to the home of his mother-in-law, Virginia Taylor, to get his five small children. The defendant was present in the Taylor home. He was cursing and the witness said to him, "Ceph, don't cuss before my children like that." An argument followed and, according to the witness, "we just got into it and he cut me . . . I grabbed him and he grabbed me. He hit me and I hit him. He cut me in my left arm. I had 22 stitches taken in my arm. Charlie Taylor tried to part us and Charlie come in and that's how he got cut. He was trying to keep Ceph from cutting me any more, I guess." On cross-examination, Johnson admitted that in the altercation he grabbed the defendant first and hit the defendant first, and that when he struck the defendant he knocked off the defendant's glasses.

Charlie Taylor testified the fight between the defendant and Johnson occurred at his house. Some words passed between them, whereupon Johnson knocked the defendant's glasses off. "I stepped between them and that's how I got it, right here. Ceph struck me with a razor or knife, one . . . I tried to part them and that's how I got cut. Frank Cephus cut me but he didn't intend to cut me."

Virginia Taylor testified that she was present at the time of the difficulty. Johnson told the defendant not to curse any more and when the defendant cursed again, Johnson hit him. "Ceph was cutting at Jug (Lester Johnson) and Charlie's arm caught it because Charlie was in the way trying to stop them. I don't know where Jug was when he got cut, he might have been outdoors." Defendant had a knife and was cutting at Lester Johnson when he struck Charlie.

There was evidence that Johnson had another fight outside the house with someone other than the defendant.

At the conclusion of the State's evidence, defendant made a motion for judgment as of nonsuit in each case. The motions were overruled. The defendant rested without introducing evidence, renewed the motions, which were again overruled. The defendant duly excepted.

The record discloses, "After the jury had returned its verdict and had been discharged from further consideration of the case, and after the jurors had resumed their seats in the courtroom, and after the examination of several witnesses who testified in the progress of another case . . . the defense counsel moved for the first time that the jury be polled. The court, from its own observation of the jurors in the Frank Cephus case, having determined that the jury in said case had not remained together, were sitting in various places in the courtroom, and had opportunity to talk with other people, denied the said motion." The defendant excepted.

STATE *v.* CEPHUS.

The jury returned a verdict of guilty in both cases. From the judgment imposing a four months road sentence in each case, the sentences to run concurrently, the defendant appealed.

*Attorney-General McMullan, Assistant Attorney-General Love, and Gerald F. White, Member of Staff, for the State.*
*Weeks & Muse, by T. Chandler Muse, for defendant, appellant.*

HIGGINS, J. Only three assignments of error require discussion. Defendant's Exception No. 7 relates to the refusal of the court to have the jury polled. In order to determine whether the verdict of the jury is unanimous, it is the right of every defendant to have the jury polled. *S. v. Young,* 77 N.C. 498; *S. v. Boger,* 202 N.C. 702, 163 S.E. 877. However, this right must be exercised at the time the jury returns its verdict or before the jury is discharged, otherwise the right is deemed to have been waived. *S. v. Toole,* 106 N.C. 736, 11 S.E. 168. In this case no request was made for a poll of the jury at the time the verdict was rendered. The jury was discharged, the jurors separated, took their seats in the courtroom. Under the circumstances, therefore, the defendant had waived his right to a poll of the jury.

Exceptions Nos. 6 and 10 relate to the charge of the court. After charging adequately and correctly on the right of self-defense in accordance with the principles approved in *S. v. Plemmons,* 230 N.C. 56, 52 S.E. 2d 10, and the cases there cited, the trial judge summarized as follows: "So you see that the self-defense plea is available to him if he, himself, did not provoke the assault, and if he did not use more force than was reasonably necessary to repel an assault, or threatened assault against him, *and* if he did not use more force than reasonably appeared to be necessary under the circumstances as they existed." The foregoing is the subject of Exception No. 3, Assignment of Error No. 10.

The court was detailing to the jury the circumstances under which self-defense plea of the defendant is available to him. The charge as given is equivalent to saying the plea of self-defense is available if the defendant did not provoke the assault, and if he did not use more force than was reasonably necessary to repel an assault or threatened assault. It is also available to him if he did not provoke the assault and did not use more force than reasonably appeared to be necessary under the circumstances as they existed. In view of the specific instructions theretofore given, it it difficult to see how the jury could have been misled.

Exception No. 5 is the basis of Assignment of Error No. 12 and is addressed to that part of the charge as follows:

"Under the evidence in this case, Gentlemen of the Jury, the Court instructs you that you will convict the defendant either of an assault with

a deadly weapon or a simple assault in both cases if you find from the evidence and beyond a reasonable doubt that he is guilty of an assault, either with a deadly weapon or simple assault, on Lester Johnson. Likewise, you will acquit the defendant on both cases if you fail to find from the evidence and beyond a reasonable doubt that he is guilty of assault with a deadly weapon or a simple assault upon Lester Johnson. So, as to both cases, you may return one of three verdicts: You may find the defendant guilty of assault with a deadly weapon or you may find him guilty of a simple assault, or you may find him not guilty."

The charge, as given, is equivalent to an instruction to the jury that if they found from the evidence beyond a reasonable doubt the defendant committed an assault on Johnson in case No. 1696, they must find beyond a reasonable doubt he likewise committed an assault on Taylor in case No. 1697. Notwithstanding a verdict of guilty in 1696, a verdict of guilty in 1697 could only be rendered by the jury upon a finding of guilt beyond a reasonable doubt in that case. The burden was upon the State in both cases. The jury might believe the evidence tending to show an assault on Johnson and might not believe the evidence tending to show an assault on Taylor. The jurors are the tryers of the facts. The law appoints them the keepers of the scales upon which the evidence is weighed. The instruction as it applied to the charge of assault on Taylor (No. 1697) was error. The error, however, is harmless.

While separate judgments, each for four months, were imposed, they were to run concurrently. The conviction and sentence in No. 1696 is without error and must stand. The sentence in No. 1697 imposes no additional burden upon the defendant. To permit the verdict in No. 1697 to stand would give the defendant his freedom when the valid sentence is served. To grant him a new trial would permit a further prosecution. The error, therefore, in so far as the appellant is concerned, is harmless. *S. v. Cody,* 224 N.C. 470, 31 S.E. 2d 445; *S. v. Register,* 224 N.C. 854, 29 S.E. 2d 464; *S. v. Williamson,* 238 N.C. 652, 78 S.E. 2d 763; *S. v. Cogdale,* 227 N.C. 59, 40 S.E. 2d 467; *S. v. Toole, supra.*

No error.