## CLIFFORD DELAIN DAVIS v. STATE OF NORTH CAROLINA.

(Filed 1 May 1968.)

**1. Criminal Law §§ 124, 134, 161—**

An appeal itself is an exception to the judgment and to matters appearing on the face of the record proper, and an opinion by the Supreme Court finding no error in the trial below is a tacit affirmation that the Court has examined the record proper and has found that the verdict is valid and unambiguous and that the sentence imposed is supported by the verdict.

**2. Criminal Law §§ 124, 126—**

A defendant has a substantial right in a verdict, and while a verdict is not complete until accepted by the court for record, the court does not have an unrestrained discretion in accepting or rejecting a verdict, but must examine its form and substance to prevent a doubtful or insufficient verdict from becoming the record of the court.

**3. Criminal Law § 124—**

The verdict in a criminal action should be clear and free from ambiguity.

**4. Same—**

A verdict should be considered in connection with the issue being tried, the evidence, and the charge.

**5. Criminal Law § 126—**

Either the defendant or the State has the right upon request in apt time to have the jury polled to enable the court and the parties to ascertain with certainty that a unanimous verdict has been reached and that no juror has been coerced or induced to agree to a verdict to which he has not fully assented.

**6. Criminal Law §§ 124, 126—    Clerk held not to have suggested or dictated verdict to the jury.**

After ascertaining that the jury had found the defendant not guilty of rape as charged, the clerk asked the jury if they found- defendant "guilty of assault with intent to commit rape or not guilty," to which the jury merely replied "Yes." The clerk then stated, "Harken to your verdict, as the court recordeth it. You say (defendant) is guilty of assault with intent to commit rape, whereof he stands charged?" and the jury again replied "Yes." Upon being polled each juror answered that he found the defendant guilty of assault with intent to commit rape. *Held:* The clerk did not suggest or dictate to the jury what their verdict should be, but was merely ascertaining what the jury's verdict was, and any uncertainty or irregularity in the taking of the verdict was cured by the polling of the jury.

Petition to rehear a petition for writ of *certiorari* which was denied by this Court on 7 February 1967.

For a clear understanding of the proceeding here it is necessary to state the history of this case. At the 15 February 1965 Criminal Session of Johnston Superior Court defendant was tried on an indict-

ment which charged him with the commission on 28 December 1964 of the capital offense of rape upon one Eugenia Elizabeth Upchurch, a female. Defendant who was represented by his counsel, Knox V. Jenkins, Jr., entered a plea of not guilty. After hearing the evidence and the charge of the court, the jury returned a verdict of "Guilty of an assault with intent to commit rape." From a judgment of imprisonment for not less than 12 nor more than 15 years, defendant appealed to the Supreme Court. Defendant having been declared an indigent, the trial judge ordered Knox V. Jenkins, Jr., to perfect his appeal to the Supreme Court; and the County of Johnston was commanded to pay the cost of mimeographing his case on appeal and the brief of his counsel.

His appeal was heard by the Supreme Court at the Fall Term 1965 and is reported in 265 N.C. 720, 145 S.E. 2d 7. This Court in its opinion briefly recapitulated the State's evidence and the defendant's evidence and found no error in the trial. Davis then petitioned the Supreme Court of the United States for a writ of *certiorari* to review the decision of the Supreme Court of North Carolina. The Supreme Court of the United States denied this petition for a writ of *certiorari* on 18 April 1966, 384 U.S. 907, 16 L. Ed. 2d 360.

On 3 September 1966 defendant, who was represented by his court-appointed counsel, George Mast, filed an application for a post-conviction hearing pursuant to the North Carolina Post-Conviction Hearing Act, N. C. Gen. Stat. Ch. 15, Art. 22. Davis's post-conviction hearing was held at the October 1966 Session of the Johnston County Superior Court by the Honorable Clarence W. Hall, Judge Presiding at that session, and the court ordered and adjudged that Davis's trial was valid and proper in all respects, that he was not entitled to the relief requested in his petition, and denied said petition. On 27 December 1966 Davis filed a petition for a writ of *certiorari* with the Clerk of this Court to review the denial of the relief which he had sought at the post-conviction hearing. This Court in conference denied his request for a writ of *certiorari* on 7 February 1967.

On 9 March 1967 Davis filed a petition for a writ of *habeas corpus,* pursuant to the provisions of Title 28, U.S.C.A. § 2254, in the United States District Court for the Eastern District of North Carolina before the Honorable John D. Larkins, Jr., United States District Judge for that District. Prior to the hearing of this petition for a writ of *habeas corpus,* Judge Larkins appointed Irvin B. Tucker, Jr., to represent Davis in this *habeas corpus* proceeding. This cause came on to be heard upon Davis's petition and the Attorney General's answer and motion to dismiss. The title of the proceeding in Judge Larkins' court is *Clifford Delain Davis, Petitioner, v. R. L.*

*Turner, Warden, Central Prison, Raleigh, N. C., Respondent.* The hearing having been concluded, Judge Larkins issued a "Memorandum Opinion and Order," which was filed 25 October 1967, in which he stated that the allegations of Davis's petition raise "a serious and fundamental issue," and Judge Larkins "respectfully requests the Supreme Court of North Carolina to entertain a belated or new petition for *certiorari*," and "directs the petitioner's court-appointed counsel to take such steps as may be necessary to bring the matter before . . . the Supreme Court of North Carolina." Judge Larkins continued his "Memorandum Opinion and Order" by urging this Court to consider only allegation "(C)" of Davis's petition for a writ of *habeas corpus,* which is as follows: "(C) That an ambigious virdict [sic] and improper verdict was rendered by the petit jurors." Judge Larkins then went on to direct the attention of this Court to the following colloquy which is contained in the record of the trial:

"At 9:25 P.M. the Jury returned to the courtroom and the following proceedings were had:

BY THE COURT: Stand up as your names are called.

BY THE CLERK: Lady and Gentlemen of the Jury, answer to your names. (Clerk calls names of all jurors.)

BY THE CLERK: Have you all agreed on your verdict?

BY THE JURY: Yes.

BY THE CLERK: Who shall speak for you?

BY THE JURY: Mr. Eldridge.

BY THE CLERK: Clifford Delain Davis, Stand up and hold up your right hand.

BY THE CLERK: Ladies and Gentlemen of the Jury, look upon the prisoner. What say you, is he guilty of the felony of rape whereof he stands indicted or not guilty?

BY THE JURY: Not guilty of that.

BY THE CLERK: What say you, is he guilty of assault with intent to commit rape or not guilty?

BY THE JURY: Yes.

BY THE CLERK: Harken to your verdict, as the Court recordeth it. You say Clifford Delain is guilty of assault with the intent to commit rape, whereof he stands charged?

BY THE JURY: Yes.

BY THE CLERK: So say you all?

BY THE JURY: (Each juror answers "Yes".)

"Upon request of counsel for the defendant that the jury be polled, the Court so ordered. Upon inquiry by the Clerk, each juror answered that he found for his verdict that the defendant, Clifford Delain Davis, was guilty of assault with intent to com-

mit rape, that that was his verdict, and that he did still assent thereto.

"The defendant moves for a new trial. Motion denied. Defendant excepts.

"The defendant moves to set aside the verdict of the jury. Motion denied. Defendant excepts."

Judge Larkins further "ORDERED that the application for a writ of *habeas corpus* shall be held in abeyance until the Supreme Court of North Carolina shall have acted upon the request of this Court."

This Court in conference on 2 February 1968, in deference to the courteous request of Judge Larkins, allowed the petition for a rehearing of the petition for writ of *certiorari* which we had heretofore denied on 7 February 1967.

*Irvin B. Tucker, Jr., for petitioner Davis.*

*Attorney General T. W. Bruton and Staff Attorney Ralph A. White, Jr., for the State.*

PARKER, C.J. We have examined the records and briefs in the first appeal in this case, which are of record in the office of the Clerk of the Supreme Court. On that appeal there was no assignment of error and no contention that the verdict rendered was invalid or improper or ambiguous and that the verdict did not support the judgment. Defendant appealed from the judgment of imprisonment imposed upon the first appeal.

This is stated in 1 Strong, N. C. Index 2d, Appeal and Error, § 26:

"An appeal is itself an exception to the judgment and to any matter appearing on the face of the record proper. A sole exception to the judgment or to the signing of the judgment likewise presents the face of the record proper for review. In either instance, review is limited to the question of whether error of law appears on the face of the record, which includes whether the facts found or admitted support the judgment, and whether the judgment is regular in form and supported by the verdict."

The verdict here, as in all cases tried in our Superior Courts, appears on the face of the record proper. While the opinion on the first appeal did not discuss the verdict rendered in the instant case, the fact that we found no error in the trial was tacit affirmation that we had examined the record proper, and that the verdict was not invalid or ambiguous or uncertain but was definite and certain, and that the verdict rendered supported the sentence of imprisonment.

With respect to the question which the clerk asked the jury —
"What say you, is he guilty of assault with intent to commit rape or
not guilty?" — to which the jury merely responded "Yes," the de-
fendant contends that "the Presiding Judge should have sent the
jury back into their chambers with instructions to bring out a ver-
dict which was meaningful. However, he did not do this, and, instead,
the Clerk put her own interpretation on what the jury verdict was
and recorded it as a verdict of guilty of assault with intent to com-
mit rape." Defendant also contends "that a poll would not cure a
void verdict which has been suggested or dictated by the Clerk.
. . . The jury, after having been told by the clerk in open court
what their verdict should be, and having given in to the clerk in
open court, would naturally answer the poll of the jury in favor of
the verdict they had been committed to by the dictation of the
Clerk." Defendant further contends that the clerk's interpretation
of the meaningless jury verdict has deprived him of his right to trial
by jury as guaranteed by the Sixth Amendment to the United States
Constitution and Article I, section 13, of the North Carolina Con-
stitution.

To support his argument, defendant relies on the decisions of *S.
v. Godwin,* 260 N.C. 580, 133 S.E. 2d 166, and *S. v. Gatlin,* 241 N.C.
175, 84 S.E. 2d 880.

*S. v. Godwin, supra,* is factually distinguishable. In that case the
defendant pleaded not guilty. The record discloses the following in
respect to the verdict:

> "Upon the coming in of the verdict, the Jury says: 'We de-
> cided that he is guilty of an Assault on this person.'
> "COURT: Do I understand that the Jury finds the Defend-
> ant guilty of an Assault with a Deadly weapon, inflicting serious
> injuries, not resulting in death, as charged in the Bill of Indict-
> ment? Do you mean to say that?
> "JUROR: Yes, sir.
> "COURT: So say you all?
> "JURY: Yes, sir, we agree.
> "CLERK: Do you, the Jury, find the Defendant guilty of
> Assault with a Deadly Weapon with Intent to Kill, inflicting
> serious injuries not resulting in death? Jury: Yes.
> "COURT: Guilty as charged in the Bill of Indictment?
> "JURY: Yes."

Upon the verdict the court sentenced the defendant to prison. De-
fendant assigned as error the verdict as rendered upon which the
judgment was based on the ground that the trial judge told them in

effect what their verdict should be. This Court agreed that that contention was good and awarded defendant a new trial. The decision was clearly right. In the first place the judge told the jury in effect what the verdict should be, and in the second place, so far as the record of the trial discloses, which is on file in the office of the Clerk of the Supreme Court, the jury was not polled.

S. v. Gatlin, supra, is also factually distinguishable. The case on appeal as reported in our Reports has this statement:

> "The defendant Wayne Anderson is not guilty of manslaughter and that the defendant Reeves Gatlin is guilty of driving. Without further statement by the jury the court directed this inquiry to them, 'And guilty of manslaughter?' To which the juror replied, 'Yes.' To the foregoing the defendant objects and excepts."

The Supreme Court was clearly right in awarding a new trial on the ground that the judge improperly suggested to the jury what their verdict should be. The Court in its opinion states this language:

> "(W)e have no hesitancy in holding that the verdict 'Guilty of driving' is no crime and is not responsive to the charge in the indictment. Hence the trial judge had the discretionary power to give further instructions to the jury and order that they retire and give further consideration to the matter, and bring in a proper verdict. But the judge was without authority to suggest to the jury what their verdict should be."

So far as is shown by the record, which is on file in the office of the Clerk of the Supreme Court, the jury was not polled in the Gatlin case.

These principles of law are well settled in this State: While a verdict is a substantial right, it is not complete until accepted by the court for its records. S. v. Rhinehart, 267 N.C. 470, 148 S.E. 2d 651; S. v. Perry, 225 N.C. 174, 33 S.E. 2d 869. Verdicts in criminal cases ought to be clear and free from ambiguities and uncertainties. S. v. Rhinehart, supra; S. v. Jones, 227 N.C. 47, 40 S.E. 2d 458. The enforcement of the criminal law and the liberty of citizens demands exactitude. S. v. Jones, supra. In accepting or refusing a verdict the trial judge cannot exercise unrestrained discretion. The trial judge should examine a verdict with respect to its form and substance to prevent a doubtful and insufficient verdict from becoming the record of the court, but his power to accept or refuse the jury's finding is not absolute. S. v. Perry, supra; S. v. Bazemore, 193 N.C. 336, 137 S.E. 172.

DAVIS v. STATE.

It is well settled in this jurisdiction that the verdict should be taken in connection with the issue being tried, the evidence, and the charge of the court. *S. v. Tilley*, 272 N.C. 408, 158 S.E. 2d 573; *S. v. Thompson*, 257 N.C. 452, 126 S.E. 2d 58; *S. v. Smith*, 226 N.C. 738, 40 S.E. 2d 363; *S. v. Cody*, 225 N.C. 38, 33 S.E. 2d 71; *S. v. Gregory*, 153 N.C. 646, 69 S.E. 674.

From the opinion in the first appeal, *S. v. Davis, supra,* and from the charge of the court as it appears in the record of this case which is on file in the office of the Clerk of the Supreme Court, it is shown that the court instructed the jury that they might return one of the following verdicts: Guilty of rape, guilty of rape with recommendation of life imprisonment, guilty of assault with intent to commit rape, guilty of assault with a deadly weapon, guilty of assault on a female (defendant being a male person over the age of 18 years), or not guilty. As appears from the "Memorandum Opinion and Order" transmitted to us by Judge Larkins, and from the original record in this case which is on file in the office of the Clerk of the Supreme Court, when the jury returned with its verdict and after the clerk, according to the practice in this jurisdiction, called over the names of the jury and asked them if they had all agreed on a verdict, the jury replied, "Yes." The clerk then said to the jury, "Who shall speak for you?" The jury replied, "Mr. Eldridge." The clerk then told the defendant, according to the practice in our courts, to stand up and hold up his right hand, and then the clerk addressed the jury as follows: "Ladies and Gentlemen of the Jury, look upon the prisoner. What say you, is he guilty of the felony of rape whereof he stands indicted or not guilty?" That was the proper question for the clerk at that stage of the proceeding to address to the jury. The jury replied, "Not guilty *of that.*" (Emphasis ours.) It is clear and manifest that that means that the jury found the defendant not guilty of the capital offense of rape, but it does not mean that the jury found a verdict of not guilty of all the charges. Immediately thereafter the clerk addressed the jury, "What say you, is he guilty of assault with intent to commit rape or not guilty?" The jury replied, "Yes." The clerk then said to the jury, "Harken to your verdict, as the Court recordeth it. You say Clifford Delain is guilty of assault with the intent to commit rape, whereof he stands charged?" The jury replied, "Yes." The clerk then said, "So say you all?" Each juror answered, "Yes." Immediately after that had been done, defendant requested that the jury be polled and the record before us reads as follows: "Upon inquiry by the Clerk, each juror answered that he found for his verdict that the defendant, Clifford Delain

Davis, was guilty of assault with intent to commit rape, that that was his verdict, and that he did still assent thereto."

When the jury answered "Yes" to the question propounded by the clerk, "What say you, is he guilty of assault with intent to commit rape or not guilty?" it was certainly not a verdict of acquittal on that charge of an assault with intent to commit rape. The trial judge should examine a verdict with respect to its form and substance to prevent a doubtful and insufficient verdict from becoming a record of the court. When the clerk said to the jury, "Harken to your verdict, as the Court recordeth it. You say Clifford Delain is guilty of assault with the intent to commit rape, whereof he stands charged?", the jury replied, "Yes." The clerk then said "So say you all?" Each juror answered, "Yes." That was not a verdict that was suggested or dictated by the clerk. It was merely an inquiry to ascertain what the verdict of the jury was and whether it was clear and free from ambiguities and uncertainties. The question asked the jury by the clerk was certainly a permissible interpretation of the answer "Yes" to the question. When this took place, counsel for defendant asked that the jurors be polled. This was done, and upon the polling of the jury each juror answered that he found for his verdict that the defendant, Clifford Delain Davis, was guilty of assault with intent to commit rape, that that was his verdict, and he did still assent thereto. If there was any uncertainty in the verdict, that uncertainty was completely removed by the polling of the jury and their answers to the court upon the polling. We do not agree with the contention of defendant that the jury, after having been told by the clerk in open court what his verdict should be, and having given in to the clerk in open court, would naturally answer the poll of the jury in favor of the verdict that they had been committed to by the dictation of the clerk, for three reasons: First, upon the face of the record proper, there is no proof that the clerk dictated or suggested what the verdict should be, but she merely addressed to them an inquiry; second, the record shows plenary proof tending to show the defendant's guilt of the capital charge of rape, and the jury mercifully convicted him of a lesser charge; and third, as anyone knows who has had long experience upon the trial bench in this State, juries are not so easily swayed as defendant contends. As stated above, it is well settled in this jurisdiction that a verdict should be taken in connection with the issue being tried, the evidence, and the charge of the court. In our opinion, and we so hold, if there is any irregularity in the taking of the verdict, which we do not admit, this irregularity was completely cured by the polling of the jury. The

verdict was legal and proper and supports the judgment of imprisonment imposed in this case.

When requested in apt time, both defendant and the solicitor for the State have·a legal right to demand that the jury be polled. *S. v. Dow,* 246 N.C. 644, 99 S.E. 2d 860; *S. v. Cephus,* 241 N.C. 562, 86 S.E. 2d 70; *S. v. Young,* 77 N.C. 498. Article I, section 13, of the North Carolina Constitution provides: "No person shall be convicted of any crime but by the unanimous verdict of a jury of good and lawful persons in open court. . . ." The right of a defendant to poll the jury which has returned a verdict of guilty against him, when made in apt time, has been widely recognized and accorded. *Commonwealth v. Martin,* 379 Pa. 587, 109 A. 2d 325. The procedure had its genesis in ancient common law. See 2 Hale, Pleas of the Crown 299. The polling of the jury, which was the procedure in the instant case, is a procedure whereby the jurors are asked individually the finding they have arrived at. The practice requires each juror to answer for himself, thus creating an individual response. The object is to give each juror an opportunity, before the verdict is recorded, to declare in open court his assent to the verdict which the foreman has returned, and thus to enable the court and the parties to ascertain *with certainty* that a unanimous verdict has been in fact reached and that no juror has been coerced or induced to agree to a verdict to which he has not fully assented. *S. v. Dow, supra; S. v. Young, supra; Commonwealth v. Martin, supra; Miranda v. United States,* 255 F. 2d 9 (1st Cir.); 21 Am. Jur. 2d, Criminal Law § 371; 23A C.J.S. Criminal Law § 1392.

As far back as 1877 we said in *S. v. Young, supra:*

> "When the verdict has been received from the foreman and entered, it is the duty of the clerk to cause the jury to hearken to their verdict as the court has it recorded, and to read it to them and say: 'So say you all?' At this time any juror can retract on the ground of conscientious scruples, mistake, fraud, or otherwise, and his dissent would then be effectual. This right is surely one of the best safeguards for the protection of the accused, and as an incident to jury trials would seem to be a constitutional right, and its exercise is only a mode, more satisfactory to the prisoner, of ascertaining the fact that it is the verdict of the whole jury."

The facts about the rendition of the verdict in *S. v. Walls,* 211 N.C. 487, 191 S.E. 232, cert. den. 302 U.S. 635, 82 L. Ed. 494, are not identical with the facts in the instant case but are apposite. In that case the Court said:

DAVIS *v.* STATE.

"Did the court err when the jury returned a verdict of guilty by saying: 'You say that Tommie Walls is guilty of burglary in the first degree of the felony whereof he stands charged?' Was that not an expression of opinion? We think not; it was an inquiry.

"The jury announced it was ready to render verdict and the clerk said, 'Gentlemen of the Jury, answer to your names,' and called each name separately and each juror answered 'Present.' (By the clerk) Q. 'Have you agreed on your verdict?' A. 'We have.' (By the clerk) 'Stand up Tommie Walls; hold up your right hand. Gentlemen of the Jury, look upon the prisoner; what say you as to his guilt of the felony burglary in which he stands indicted in the bill of indictment, Guilty or Not guilty?' A. 'Guilty.' (By the court) Q. 'So say you all?' A. 'Yes.' (By the court) 'By your verdict you say that Tommie Walls is guilty of burglary in the first degree of the felony whereof he stands charged?' A. 'Yes, sir.' (By the clerk of court) Q. 'So say you all?' A. 'Yes, sir, we find him guilty of first degree burglary with recommendation of the mercy of the court.'

" 'Counsel for the defendant requested that the jury be polled, whereupon the clerk, under the directions of the court, called each juror by name, requesting that the said juror stand; that the clerk asked each juror two questions: (1) "Mr. Juror, did you assent to the verdict rendered by your foreman?" and (2) "Do you still assent thereto?" Each juror answered in the affirmative to each of the two questions propounded, each question being asked and answered separately.' If there was error in the inquiry of the court, it was not prejudicial, as defendant had the jury polled."

In *S. v. Wilson*, 218 N.C. 556, 11 S.E. 2d 567, the facts about the rendition of the verdict are not identical but are apposite. In that case the defendant was tried on an indictment containing two counts: First, a charge of the capital offense of rape, and second, a charge of feloniously and carnally knowing and abusing a female child over 12 years and under 16 years of age who had never before had sexual intercourse with any person, defendant being a male person over 18 years of age. The jury was impaneled. The solicitor announced that he would not ask for conviction of the capital offense of rape charged in the first count but of such lesser degree of crime as the evidence might appropriately present. With this announcement the case went to trial upon the two-count indictment. The Supreme Court in its opinion said this about the verdict in the case:

"When the jury returned to the courtroom to render their verdict, the record discloses that the following occurred:

THE CLERK: Gentlemen, have you agreed on your verdict?

JUROR: We have.

THE CLERK: What is your verdict on the first count?

JUROR: Not Guilty.

THE CLERK: What is your verdict on the second count?

JUROR: Guilty of an assault on a female.

THE COURT: Gentlemen, the Court cannot accept this verdict. It is not rendered in accordance with the instructions the Court has given you. As the Court has heretofore explained to you, as to the first count in the bill of indictment, the jury may return one of three possible verdicts, namely, a verdict of guilty of an assault with intent to commit rape, or a verdict of guilty of an assault on a female, or a verdict of not guilty, and that as to the second count in the bill of indictment, which is the charge that the defendant had sexual intercourse with a female child over 12 years of age and under 16 years of age, who had not previously had sexual intercourse with any person, the jury may return one of two possible verdicts, namely, a verdict of guilty or a verdict of not guilty. You may retire to your jury room and deliberate further as to your verdict.

"After deliberating for 30 minutes or more, the jury returned again to the courtroom, when the following occurred:

THE CLERK: Gentlemen, have you agreed on your verdict?

JUROR: We have.

THE CLERK: What is your verdict as to the first count?

JUROR: Guilty.

THE COURT: Guilty of what?

JUROR: Guilty of an assault on a female.

THE COURT: Guilty of an assault on a female: So say you all, gentlemen of the jury?

JURORS: (All twelve jurors spoke or nodded their assent.)

THE CLERK: What is your verdict as to the second count?

JUROR: (The juror who had heretofore acted as spokesman hesitated and made some remark, in a low voice, which the Court did not hear.)

THE COURT: Gentlemen, the second count, as the Court has explained to you, charges the defendant with having had sexual intercourse with a female child over 12 years of age and under 16 years of age, who had not previously had sexual intercourse with any person: Do you find the defendant guilty or not guilty of this charge?

Juror: Guilty.

The Court: Guilty: So say you all, gentlemen of the jury?

Jurors: (All twelve jurors spoke or nodded their assent.)

The Court: Gentlemen, as the Court understands your verdict with reference to the first count, your verdict is that the defendant is guilty of an assault on a female. If that is your verdict as to the first count, raise your right hands.

Jurors: (All twelve jurors thereupon raised their right hands.)

The Court: Gentlemen, as the Court understands your verdict with reference to the second count, your verdict is that the defendant is guilty, that is, guilty of having sexual intercourse with a female child over 12 years of age and under 16 years who had not previously had sexual intercourse with any person. If that is your verdict as to the second count, raise your right hands.

Jurors: (All twelve jurors thereupon raised their right hands.)

The Court: Record the verdict, Mr. Clerk.

"The jury was then dismissed.

"Defendant's first exception is 'to all of the foregoing.' His second and remaining exception is to the judgment rendered on the verdict, which, upon the first count, sentences him to two years on the public roads, and, on the second count, sentences him to five years in State's Prison. Other exceptions are formal.

"Conceding that the jury had finished their deliberations and reached a verdict to the effect that the defendant was not guilty on the first count and had properly delivered the same in open court, and that it was beyond the power of the court to recommit the issue to them, we are of the opinion that no irregularity or defect of procedure attended the rendering of the verdict on the second issue, and that a judgment based thereupon is valid. The jury attempted to return a verdict upon this issue, it is true, but it was not responsive to the indictment, and since it was a verdict they could not in law render, it was the duty of the judge to require that they continue their deliberations until a proper verdict should be reached. His instructions as to the verdict they might render on this count are consistent with the law. The manner of its reception is unobjectionable.

"Since the terms of imprisonment assigned under both counts are to run concurrently, and that under the second count, where there is a valid conviction, is the longer, the defendant is not

harmed by something which would not add to his punishment. But the majority of the Court feels that so much of the judgment as is based on the verdict on the first count — that is, the sentence of two years — should be stricken out, and it is so ordered. The sentence on the second count — that is, five years in State's Prison — is valid, and will stand. As thus modified, the judgment is

"Affirmed."

In *S. v. Sears*, 235 N.C. 623, 70 S.E. 2d 907, the facts as to the rendition of the verdict are not identical with the facts in the instant case but they are apposite. In that case the Court said:

". . . Exception is taken to the manner in which the verdict of the jury was received.

"The record shows that: 'The jury retired and subsequently returned into the court and when asked by the Clerk how they found, the answer was "Guilty as charged;" whereupon the court stated to the jury that the charge in the bill of indictment was that of rape, which is the capital felony, and that, as explained in his charge to the jury, the Solicitor was not asking for a verdict of "Guilty of Rape" but for a verdict of "Guilty of Assault with Intent to Commit Rape"; and the court inquired of the jury if that was the verdict which they intended to render, that is to say, "Guilty of assault with intent to commit rape," whereupon the jurors all nodded their heads in acquiescence and the foreman stated, "That is our verdict, guilty of assault with intent to commit rape." The verdict was accepted by the court and enrolled upon the Minutes of the Court of the Term.'

"We hold that the manner of receiving the verdict is unobjectionable. This Court so held in *S. v. Wilson*, 218 N.C. 556, 11 S.E. 2d 567, where verdict on the second count was received in similar manner.

"The Court said: 'We are of opinion that no irregularity or defect of procedure attended the rendering of the verdict on the second issue, and that a judgment based thereupon is valid. The jury attempted to return a verdict upon this issue, it is true, but it was not responsive to the indictment, and since it was a verdict they could not in law render, it was the duty of the judge to require that they continue their deliberations until a proper verdict should be reached. His instructions as to the verdict they might render on this count are consistent with the law.'

"Such is the situation in hand. What transpired simply spelled out what the jury had agreed upon as its verdict."

The Attorney General in the case of *S. v. Gatlin, supra,* in his brief relied upon *S. v. Walls, supra; S. v. Wilson, supra;* and *S. v. Sears, supra.* The factual situation in the *Gatlin* case was not similar to the factual situation in the three cases upon which the Attorney General relied. In its opinion in the *Gatlin* case, the Supreme Court said in connection with the cases relied upon by the Attorney General: "However, careful consideration of the factual situations in these cases leads to the conclusion that they are not out of harmony with the principles hereinabove set forth. But if they were, this Court would not be inclined to follow them, and deviate from the salutary principles, — long safeguarded in the pages of our decisions." The opinion in the *Sears* case was written by the same judge who wrote the opinion in the *Gatlin* case. Certainly the Supreme Court did not overrule the decisions in the *Walls,* the *Wilson,* and the *Sears* cases. The last sentence quoted from the *Gatlin* case is pure dictum. We agree with the decision in the *Gatlin* case that the decisions in the *Walls,* the *Wilson,* and the *Sears* cases are not out of harmony with the decision in the *Gatlin* case, and we are of the opinion, and so hold, that the decision in the instant case is not out of harmony with the decisions in the *Gatlin* case and the *Godwin* case.

In *S. v. Brown,* 204 N.C. 392, 168 S.E. 532, this is said about the verdict:

"As to the verdict of the jury on the trial, the record discloses: 'The jury returned to the court room and when asked by the clerk, if they had arrived at a verdict, one juror answered, we find them all guilty of manslaughter, another answered guilty of third degree murder. Attorney for defendants asked that jury be polled, each juror asked as to each of the defendants, R. J. Alphin being the first juror polled answered third degree murder. Attorney for the defendant requested that the record speak what they say. The juror, Mr. Alphin, said he intended to say manslaughter. All the jurors then polled as to each defendant and all answered guilty of manslaughter. To the foregoing verdict, the defendants in apt time, objected and excepted.'

"In the order correcting the minutes, it appears that there were no minutes to be corrected. 'The court further finds as a fact, that the record heretofore sent to the Supreme Court by the clerk of this court spoke the truth as the records then existed.'

"The record discloses that on the trial of defendant the jury as polled answered 'guilty of manslaughter.' We see no prejudicial or reversible error. The juror no doubt was thinking of

murder in the first degree, murder in the second degree and manslaughter was third degree. The juror said he intended to say manslaughter. The court below had, under the facts and circumstances of this case, discretion to do what was done to make the record speak the truth and have it so recorded. The cases cited by the defendant are not applicable to the facts of record.

"The learned and painstaking judge in the court below, in a long charge, gave all the contentions on both sides fairly, set forth the law carefully, applicable to the facts. We find no prejudicial or reversible error.

"No error."

Defendant has not been denied, as he contends, his right to a jury trial as guaranteed to him by the Sixth Amendment to the United States Constitution and by Article I, section 13, of the North Carolina Constitution. If there was any irregularity in the taking of the verdict, which we do not concede, what the verdict was was made crystal clear by the jury when the jury was polled. The verdict in this case was fixed, definite, and certain, as shown by the poll of the jury and otherwise, and the punishment of imprisonment was within the permissible limits fixed by the North Carolina statute for a conviction of assault with intent to commit the crime of rape. G.S. 14-22. We are of the same opinion that we were on the first appeal in this case. Our opinion then and now is that in the trial of this case, and particularly in the rendition of the verdict, there is

No error.