STATE OF NORTH CAROLINA v. LIONELL C. SKINNER, JR.

No. 754SC148

(Filed 21 May 1975)

1. **Homicide § 20— three photographs of deceased — admission proper**

    The trial court in a murder prosecution did not err in allowing into evidence three photographs of the deceased's body to illustrate the testimony of an SBI agent.

2. **Homicide § 28— defense of accident — instruction proper**

    The trial court's instruction on the defense of accident in a murder prosecution did not improperly restrict the jury to the evidence of accident in their deliberation as to whether a reasonable doubt of defendant's guilt existed.

3. **Homicide § 31— verdict of guilty of "manslaughter" — acceptance of verdict proper**

    The trial court in a murder prosecution did not err in accepting the verdict of the jury finding the defendant guilty of "manslaughter" without a specification that it was voluntary or involuntary where it was clear from the circumstances that the jury found that defendant was guilty of the crime of voluntary manslaughter.

APPEAL by defendant from *Fountain, Judge*. Judgment entered 19 September 1974 in Superior Court, ONSLOW County. Heard in the Court of Appeals 16 April 1974.

Defendant was charged in a bill of indictment with murder in the first degree of Gwen J. Bridges on 5 August 1974. The State, however, elected to seek only a verdict of guilty of murder in the second degree. The defendant pled not guilty to the charge and was tried before a jury.

The State's first witness was David R. Marshall, an agent with the State Bureau of Investigation, who testified that he was called to the Sir Roberts Restaurant in Jacksonville at approximately 12:30 a.m. on the morning of August 5. When he arrived, he observed the body of the deceased lying at an angle in a driveway area between the restaurant and a chain link fence which enclosed an adjacent Plymouth automobile dealership. The deceased had a severe wound in the neck area. Behind the restaurant were several occupied wood-frame houses, a mobile home, and a church. Over defendant's objection, three photographs taken of the deceased's body and the crime scene were introduced to illustrate the testimony of Agent Marshall.

State v. Skinner

Dr. Walter Gable, the medical examiner for the State in Onslow County and an expert in pathology, testified that he autopsied the deceased's body on August 5 and determined the cause of death to be a gunshot wound to the neck.

Paula Stuckart, a friend of the deceased, testified that on the night of August 4, she and the deceased had ridden their bicycles to the Sir Roberts Restaurant. They went in and ordered a beer and eventually joined a party of Marines. Later the same evening, she and the deceased rode their bicycles to another bar, but thereafter returned to Sir Roberts and rejoined the group of Marines. A couple of the Marines asked if they might ride the bicycles and were given permission. Around 11:30 p.m. the two women left the restaurant and went outside to get on their bikes, but they were not where they left them. They went around to the back of the restaurant and saw the bikes parked in front of a house. The occupants sought to prevent them from taking the bikes, so they went back into the restaurant whereupon all the Marines ran outside and down the alley beside the restaurant leading to the houses. A confrontation between the Marines and a group of blacks occurred in the alley. Some had sticks and there was evidence of a fight. All of a sudden, she noticed a black person holding a gun in front of him and pointing it in the general direction of the restaurant crowd. It went off as the deceased was moving between the two crowds of people and the deceased went down.

Paul R. Grey, a Corporal in the Marine Corps, testified that he was present at the restaurant and at the scene of the shooting on the night in question. He testified that a man, whom he could not identify, came up to the side of the restaurant carrying a double-barrel, sawed-off shotgun. He held the gun out in front of him and fired it. Corporal Grey was approximately nine to twelve feet from the man when the weapon was discharged.

Deputy Sheriff Keith Taylor testified that he went to defendant's home at 3:00 a.m. on the morning of the shooting to question him regarding the shooting. Defendant was not home, so Taylor returned to the office whereupon at 4:30 a.m., the defendant arrived with his mother. After having been advised of his rights and asked some questions, the defendant gave Taylor a statement admitting that he had held the gun when it discharged, but claimed that it was an accident; that he was bumped and his hand must have hit the butt of the gun caus-

ing it to fire. The defendant told Taylor that he had buried the shotgun under the steps of the church behind the restaurant.

Defendant took the stand in his own behalf and testified that he entered the affray because there were mostly women and children living in the area and he was afraid the Marines might hurt them. So, he went out into the woods where the shotgun was cached and returned to the scene of the fight. When he arrived, the Marines, who were carrying sticks, started moving toward the group of blacks. The defendant began backing up, stumbled on someone's foot or a brick, whereupon his finger must have hit the trigger causing the weapon to discharge.

After all the evidence, defendant renewed his motion for judgment as of nonsuit, which was denied. The judge charged the jury on murder in the second degree, manslaughter and involuntary manslaughter. They returned a verdict of guilty of manslaughter and from a judgment sentencing defendant to a term of imprisonment, he appealed.

*Attorney General Edmisten by Associate Attorney Joan H. Byers for the State.*

*Edward G. Bailey for the defendant.*

CLARK, Judge.

[1] The defendant contends that the admission of the three photographs of the deceased's body to illustrate the testimony of SBI Agent Marshall was error, not so much because they were gruesome, but because the number admitted was excessive. In *State v. Mercer*, 275 N.C. 108, 165 S.E. 2d 328 (1969), four photographs were admitted depicting the dead body of the victim of an alleged murder and a pool of blood on a bed beside the body of another victim. The court stated that "[t]hese four photographs, which depict substantially the same scene, were competent to illustrate the testimony. Whether all or a less number should have been admitted was for determination by the trial judge in the exercise of his discretion." 275 N.C. at 120. It was only after a number of additional photographs were introduced of the same import that the Supreme Court found abuse. In light of the *Mercer* case, we discern no basis for defendant's claim that the trial court abused its discretion. The photographs were relevant and material to illustrate a witness's testimony with regard to condition of the body, location of the wound, and

State v. Skinner

.depiction of the general scene of the crime. That they were gory or gruesome will not alone render them inadmissible. See *State v. Frazier*, 280 N.C. 181, 185 S.E. 2d 652 (1972) ; *State v. Westbrook*, 279 N.C. 18, 181 S.E. 2d 572 (1971) ; and *State v. Atkinson*, 275 N.C. 288, 167 S.E. 2d 241 (1969).

[2]   In the charge to the jury the trial court instructed upon the defense of accident which arose from the evidence adduced at trial and concluded that portion of his charge as follows:

> "In determining whether you have a reasonable doubt of his guilt, it is proper for you to consider the evidence relating to accident both the evidence of the State as well as or rather the defendant as well as that of the State."

The defendant contends that this instruction improperly restricted the jury to the evidence of accident in their deliberation as to whether a reasonable doubt of defendant's guilt existed. He cites *State v. Braxton*, 230 N.C. 312, 52 S.E. 2d 895 (1949). However, read contextually, it is clear that this instruction dealt only with the clarification of the evidence of accident and did not purport, as the defendant contends, to restrict the jury to that evidence alone in determining guilt or innocence. The court repeated on some nine other occasions the burden resting upon the State to satisfy them beyond a reasonable doubt of defendant's guilt. In *State v. Braxton, supra,* a reasonable doubt was one defined in pertinent part as one "based upon reason and common sense and growing out of the evidence in the case." This instruction was found prejudicial in that it did not allow the jury to find a reasonable doubt based upon a lack of the evidence. It appears from later cases that it is only when this "growing out of the evidence" language or language of the same import is used that an instruction without adding "or lack of the evidence" will be held prejudicial. *State v. Butler*, 21 N.C. App. 679, 205 S.E. 2d 571 (1974). We find of particular interest a model instruction on the defense of alibi approved by our Supreme Court in *State v. Bridgers*, 233 N.C. 577, 580, 64 S.E. 2d 867, 870 (1951), to wit:

> " . . . [T]he defendant's evidence of alibi is to be considered by you like any other evidence tending to refute or disprove the evidence of the State. And if upon consideration of all the evidence in the case, including the defendant's evidence in respect to alibi, there arises in your minds a reasonable doubt as to the defendant's guilt, he should be acquitted."

Read contextually, we believe that the charge in the present case substantially complied in principle with that charge suggested above. Consequently, we find no prejudice.

[3] The defendant further contends that the trial court erred in accepting the verdict of the jury finding the defendant guilty of "manslaughter" without a specification that it was voluntary or involuntary. In its charge to the jury, the trial court instructed on the distinctions between "manslaughter" and "involuntary manslaughter," without mentioning the term "voluntary" with refrence to "manslaughter"; and the court fully instructed the jury on the elements of voluntary manslaughter and in the final mandate charged that the jury must find beyond a reasonable doubt all of these factual elements before it could return a verdict of guilty of "manslaughter". In these circumstances, there could be no question that when the jury returned a verdict of guilty of "manslaughter," they found in fact that the defendant was guilty of the crime of voluntary manslaughter. It is well settled in this jurisdiction that the verdict should be taken in connection with the issues being tried, the evidence, and the charge of the court. *State v. Benfield,* 278 N.C. 199, 179 S.E. 2d 388 (1971); *Davis v. State,* 273 N.C. 533, 160 S.E. 2d 697 (1968); *State v. Childs,* 269 N.C. 307, 152 S.E. 2d 453 (1967); and *State v. Williams,* 22 N.C. App. 502, 206 S.E. 2d 783 (1974). Read in connection with the instructions, we find no ambiguity in the verdict.

The defendant's remaining assignments of error are without merit. Consequently, in the trial below, we find

No error.

Judges MORRIS and VAUGHN concur.