STATE OF NORTH CAROLINA v. WILLIE JAMES ASBURY

No. 7527SC819

(Filed 5 May 1976)

1. Criminal Law § 126— polling of jury — reluctant assent to verdict —
   subsequent free assent — verdict not defective
       Where a juror, during the polling of the jury, indicates that his
   consent to the verdict was given reluctantly, such verdict is not de-
   fective if it appears that the juror ultimately freely assents to the
   verdict.

2. Criminal Law § 126— polling the jury — idle questions of juror — re-
   sponse of judge not prejudicial
       Where one juror, during the polling of the jury, asked why there
   were three questions and asked what the differences in the questions
   were, the trial court's response to the juror's inquiry that all three
   questions would call for the same response was not prejudicial to de-
   fendant, since it appeared that the juror's questions stemmed from
   idle curiosity, and the juror subsequently unequivocally indicated his
   assent to the verdict.

       Judge CLARK dissenting.

    APPEAL by defendant from Kirby, Judge. Judgment entered
14 May 1975 in Superior Court, GASTON County. Heard in the
Court of Appeals 10 February 1976.

    Defendant was indicted for the crime of armed robbery.
Upon the call of the case and on motion of the State, the de-
fendant's case was consolidated for trial with that of another
defendant allegedly involved in the same robbery.

    In the light most favorable to the State, the evidence tended
to show that at about 4:15 p.m. on 14 January 1975, defendant
and Edward Conner (the defendant in the companion case)
went to the Fairview Grocery and Service in Gastonia. The two
men entered the store. Defendant went to the candy counter
and Conner went to the ice cream box. Defendant asked the
proprietor, Raymond Robinson, for a certain named candy bar
which was located underneath the counter. Robinson reached
down to get the merchandise and as he stood up he saw the de-
fendant pointing a small gun, thought to be a .22 caliber pistol,
directly at him. Defendant announced that this was a holdup
and, following his demand for money, Robinson directed him to
the cash register. The defendant instructed Robinson to open
the cash register and called for his companion to come and

search the man. Robinson was relieved of his pocketbook and some $25.00 in cash from the register while being held at gunpoint. Robinson was then directed to the other side of the store, told to face the wall and the two men ran to an automobile they had parked outside the store near the gas pumps. Robinson wrote down the license plate number as the men drove off.

Both defendants were identified in court by Robinson as the same two individuals who had robbed him on 14 January 1975. The court, following a *voir dire* examination found as a matter of law that "the in-court identification of the defendant Willie James Asbury, is based upon the witness's recollection of the defendant at the time of the robbery on the 14th of January 1975; and that said identification has not been unduly or improperly suggested by the conduct of the investigating officers when investigating the suspected getaway car some four to six weeks after the robbery on the 14th day of January 1975."

Thereafter, the State called Gloria Glenn, who testified that she was a resident of Gastonia, North Carolina, and knew Conner by the nickname "Tanker." She further testified that in January of 1975, she owned a 1964 Chevrolet and that the license plate number on that automobile was identical to the one on the car used by the holdup men and taken by the proprietor at the time of the robbery. Conner had agreed to put another motor in this vehicle and had taken the car sometime in November of 1974 and did not return it until late January, 1975. In November, 1974, the car was not running and the tag referred to above was in the trunk of the car during that period of time.

The defendant's evidence, including the testimony of Conner, tended to show that on 14 January 1975 Asbury and Conner were together at the home of Conner's sister between the hours of 2:30 p.m. and 5:00 p.m. Thereafter, they went directly to the home of Conner's cousin some half block away and remained there between the hours of 5:00 p.m. and 2:00 a.m., 15 January 1975. The defendants did not leave this residence at any time during this nine hour period. Conner's cousin also testified that defendant Conner had been at her house between the hours of 10:00 a.m. and 1:30 p.m. on 14 January 1975 and left to pick up defendant Asbury from his job.

The city's personnel director testified that defendant Asbury was a city employee in the sanitation department and that

his records indicated that defendant Asbury had reported for work on the morning of 14 January 1975 although these records apparently did not indicate the time of his arrival or the time of his departure. He said that usually the men would come to work at approximately 7:00 a.m., complete the designated work and leave when such work was completed. Generally the work could be finished by 1:00 p.m. or 2:00 p.m.

On cross-examination, Conner stated that he had possession of the car belonging to the witness Glenn sometime in November until January for the purpose of repairs, but he had no particular knowledge or interest in the license plate. He was earning a living doing mechanic work and did not loan the tag to anyone nor did he give anyone permission to use the tag.

Defendant Asbury did not testify and upon the jury's return of guilty verdicts in both cases, the defendants moved for a poll of the jury.

From the imposition of an active sentence, this defendant appealed.

*Attorney General Edmisten, by Assistant Attorney General Robert P. Gruber and Associate Attorney Jesse C. Brake, for the State.*

*Roberts and Caldwell, P.A., by Geoffrey A. Planner, for defendant appellant.*

VAUGHN, Judge.

The defendant brings forward only one assignment of error. It concerns things that occurred during the jury poll.

Specifically, the defendant refers to the three questions asked each juror by the clerk during the polling of the jury when the verdict was returned against Conner, one juror's apparent confusion, and the trial court's reaction thereto. The three questions were: "Was this your verdict? Is this now your verdict? Do you still agree and assent thereto?" When one juror asked what was the difference in the three questions and why were there three questions, the court responded, "They would really call for the same response, I would say."

The exchange that occurred between the court, the clerk and the juror appears in the record as follows:

"CLERK: David M. Houck. (Stands.) Your foreman has reported to the Court a verdict of guilty of robbery with a firearm as to Edward Conner, Jr. Was this your verdict?

DAVID M. HOUCK: (No response.)

CLERK: Was this your verdict?

DAVID M. HOUCK: Can I ask—uh. I hate to be—can I ask what the difference in the three questions is?

THE COURT: I'm sorry. Will you phrase your question again?

DAVID M. HOUCK: What are the differences in the three questions that she asked?

THE COURT: I'll let her ask the questions again.

CLERK: The three questions are: 'Was this your verdict? Is this now your verdict? Do you still agree and assent thereto?'

DAVID M. HOUCK: What I'm asking is, why are there three questions?

THE COURT: They would really call for the same response, I would say. I just don't know how better to explain. Ask the first question.

*    *    *

CLERK: Was this your verdict?

DAVID M. HOUCK: Yes, it was.

CLERK: Is it now your verdict?

DAVID M. HOUCK: (Long pause.) Yes.

CLERK: Do you still agree and assent thereto?

DAVID M. HOUCK: What would happen if I said no?

MR. FUNDERBURK: (Attorney for defendant Conner.) Your Honor, I think that he should be instructed that he has a right to say no, and that he should do so, if he so feels.

THE COURT: Well, sir. You will just have to answer the questions, and the Court will take such steps as must be taken, but you must answer the question. Ask the question again.

CLERK: Do you still agree and assent thereto?

DAVID M. HOUCK: Yes, sir."

After the clerk had polled the last juror, both defendants moved for a mistrial based on Mr. Houck's request for instructions and the court's refusal to so instruct.

Arguments were heard by the court in support of the motion for mistrial. Thereafter, the following exchange took place.

"THE COURT: Mr. Houck, stand up. (Mr. Houck stands.) Poll Mr. Houck again. Mr. Houck, listen to the questions. As I indicated to you, I think the questions are self-explanatory. Ask the juror the first question—

MR. FUNDERBURK: Your Honor, if I might, I think the problem is Mr. Houck doesn't understand—

THE COURT: All I want is Mr. Houck's verdict. That's all. With reference to what happens, that's of no concern to him. All I want to know is what his verdict is. So, ask the questions again.

CLERK: Mr. Houck, your foreman has reported to the Court a verdict of robbery with a firearm as to Edward Conner, Jr. Was this your verdict?

MR. HOUCK: Yes, ma'am.

CLERK: Is this now your verdict?

MR. HOUCK: Yes, ma'am.

CLERK: Do you still agree and assent thereto?

MR. HOUCK: Yes, ma'am.

THE COURT: Now, as to Mr. Asbury.

CLERK: Your foreman has reported to the Court a verdict of guilty of robbery with a firearm as to Willie James Asbury. Was this your verdict?

MR. HOUCK: Yes, ma'am.

CLERK: Is this now your verdict?

MR. HOUCK: Yes, ma'am.

CLERK: Do you still agree and assent thereto?

MR. HOUCK: Yes, ma'am.

THE COURT: Now, Mr. Houck, is there any misunderstanding on your part about the time frame and the essence of those questions?

MR. HOUCK: No, sir.

THE COURT: MOTIONS FOR A MISTRIAL IS DENIED."

It is of significant note that the jury was polled individually as to each defendant and that the alleged error complained of herein by defendant Asbury occurred when juror Houck was being questioned with respect to his verdict against defendant Conner. When the same juror was questioned as to his verdict against Asbury, he showed no reluctance or hesitation whatsoever.

[1]  Generally, a defendant has the right to have the jury polled in order to determine whether the verdict is unanimous. *State v. Cephus*, 241 N.C. 562, 86 S.E. 2d 70. There is, however, a conflict of authority as to whether a verdict of guilty should be accepted after a juror, during the poll, has indicated that his consent to the verdict was given reluctantly. Some courts have held that a reluctantly assented to verdict is a defective verdict. We hold to the view that such verdicts are not defective if it appears that the juror ultimately freely assented to the verdict. Subsequent answers and responses made by a juror may cure the effect of prior inconsistent, ambiguous, equivocal or evasive answers. *See* Annot., 25 A.L.R. 3d 1149.

[2]  Here, the juror unequivocally indicated his assent to the verdict. Moreover, juror Houck's responses do not indicate any reluctance to assent to the verdict. Instead, his questions seem to stem from idle curiosity as to why there were three questions instead of one. The judge's initial response to the juror's questions was not as clear as it could have been. Nevertheless, it could not have been taken as a suggestion as to what the juror's response to the poll should be. The questions directed to him were clear and simple. They called for yes or no answers. There is nothing in the record to suggest that his answers were prompted by anything other than the evidence in the case. In

the light of the overwhelming evidence of defendant's guilt, any error in the judge's response was harmless beyond a reasonable doubt.

No error.

Judge MORRIS concurs.

Judge CLARK dissents.

Judge CLARK dissenting:

The court's instruction to juror Houck that the three questions would call for the same response was error since the juror had the right to disagree at that time even though he had agreed to the verdict when reached in the jury room. Though given during the poll of the jurors relative to the verdict rendered in the case against the defendant Conner, the instruction was never corrected. Under these circumstances juror Houck could have understood that he was required to then assent to the verdict if he theretofore agreed. In my opinion the error was not harmless beyond a reasonable doubt.