STATE v. MARY ANN HALL TILLEY.

(Filed 12 January, 1968.)

**1. Criminal Law § 104—**

On motion to nonsuit, the evidence is to be considered in the light most favorable to the State and the State is to be given the benefit of all inferences reasonably deducible therefrom.

**2 Receiving Stolen Goods § 5—**

Evidence of the State tending to show that a truckload of sausage, hams and frankfurters was stolen from the premises of a meat company, that on the following day almost 1000 lbs. of the meat bearing the company's label were found in defendant's possession in an automobile driven by her, and that she was attempting to sell the meat to a retail grocer at a price less than the prevailing market price, together with her statements to officers that she was attempting to dispose of the meat at the behest of some other person but that she knew the meat was stolen, *held* sufficient to go to the jury on the issue of defendant's guilt of receiving stolen goods.

**3. Receiving Stolen Goods § 1—**

The essential elements of the offense of receiving stolen goods are the receiving of goods which had been feloniously stolen by some person other than the accused, with knowledge by the accused at the time of the receiving that the goods had been theretofore feloniously stolen, and the retention of the possession of such goods with a felonious intent or with a dishonest motive. G.S. 14-71.

**4. Criminal Law § 124—**

An apparently ambiguous verdict may be given significance and correctly interpreted by reference to the charge, the facts in evidence, the theory of the trial and the instructions of the court.

**5. Receiving Stolen Goods § 7—**

   Where the indictment charges defendant with feloniously receiving stolen goods of a value of $2500, but the theory of the trial, the evidence and the charge of the court, all relate solely to defendant's guilt of receiving stolen goods of a value less than $200, a misdemeanor, a verdict of guilty as charged is sufficient to support a conviction of a misdemeanor only and to bar a subsequent prosecution.

APPEAL by defendant from *McKinnon, J.,* February 1967 Session of CHATHAM.

Criminal prosecution on an indictment that charged defendant on 22 July 1966 at and in Chatham County with unlawfully and feloniously receiving a quantity of meat, to wit, 9,000 pounds of frankfurters, sausage, picnic hams and bologna of the value of $2,500 of the goods and chattels of Chatham Foods, Inc., before then having been feloniously stolen, taken, and carried away, and the said defendant then and there well knowing that the goods had been theretofore feloniously stolen, taken, and carried away.

The defendant, who was represented by a lawyer, Harry P. Horton, entered a plea of not guilty. The recitation of the jury's verdict contained in the transcription of the record on appeal being incorrect, the true verdict, as shown by the lower court's records, was certified under the hand and seal of the clerk of the Superior Court of Chatham County and brought before this Court as an addendum to the record. It states: "The jury returns a verdict of guilty as charged."

From a sentence of imprisonment requiring that the defendant be confined in quarters provided for women in the State's prison for a term of not less than 18 months nor more than 24 months, she appeals.

*Attorney General T. W. Bruton and Deputy Attorney General Harry W. McGalliard for the State.*
*Harry P. Horton for defendant appellant.*

PARKER, C.J. Defendant assigns as error the denial of her motion for judgment of compulsory nonsuit made at the close of all the evidence.

The State's evidence, considered in the light most favorable to it and giving it the benefit of all inferences reasonably deducible therefrom, 2 Strong's N. C. Index 2d, Criminal Law, § 104, tends to show the following facts:

On the afternoon of 21 July 1966 a Chevrolet truck with a cold storage body was loaded on the premises of Chatham Foods, Inc., with between eight and nine thousand pounds of frankfurters, bo-

logna, sausage, bacon sliced and in slabs, and picnic and tenderized hams, the property of Chatham Foods, Inc. Some of this meat was in boxes, some in packages or loose in stacks. All packages and boxes were marked with the Chatham label. After the truck had been loaded with the meat, it was plugged in at the loading dock to be refrigerated until after midnight when the driver was to return to make deliveries of the meat to customers. The truck was left unattended during the night. When the driver returned to the premises at 2 a.m. on the next day for the truck loaded with meat, it had been stolen.

Bob Phillips, a shipping clerk with Chatham Foods, Inc., had assisted the driver in loading this truck with the meat. He testified on direct examination: "A day or two later I saw about four hundred eighty or ninety pounds of the same meat I had loaded on the stolen truck when it was returned to the Chatham plant by Mr. Brooks, our sales manager." He testified on cross-examination: "I identify the meat brought back to the plant by Mr. Brooks as the stolen meat because it was mashed up and looked like it had been hauled and part of it had thawed out. Aside from the Chatham label, the only identification on the meat is the date of processing which is stamped on every package. I did not look for the date on the stolen meat and my only reason for identification of it as the stolen meat is that some of the packages were mashed and some of it thawed. I could not say from my own knowledge that it was the same meat. Chatham Foods has bologna, sausage and hams going all over North Carolina and the meat could have been part of a shipment a day or two earlier or the same date it was brought to me." He testified further in substance on cross-examination: Of the meat returned, 60 pounds consisted of frankfurters of the 28½¢ per pound grade and 45 pounds of frankfurters that sold at a maximum of 35¢ per pound. Other types of meat returned to him included 20 pounds of air-dried sausage at 53¢ or 54¢ per pound, 50 pounds of Cardinal franks selling for 34¢ per pound, 120 pounds of smoked sausage selling for about 28¢ per pound, 80 pounds of another grade of franks that sold for 36¢ or 38¢ per pound, 54 pounds of Sycamore bologna at 36¢ per pound, and 49 pounds of picnic hams at about 38¢ or 39¢ per pound. He testified on recross-examination in substance that the total value of the food returned to Chatham Foods by the sales manager was $154.39. (At the time of the return of this bill of indictment, the defendant's name was Mary Ann Hall Tilley. Thereafter, by marriage, her surname became Foster.) He did not sell Mrs. Foster 500 pounds of bologna on that date. Neither did he sell 500 pounds of bologna, 500 pounds of Jubilee weiners, nor 500 pounds of smoked sausage to Charles Jones. He does not know Joe Johnson. All the meat that leaves the Chatham plant is billed to cus-

tomers, and he has never billed any customer for as much as 500 pounds of weiners and 900 pounds of smoked sausage.

Everett Lee Barbee was a meat cutter working for Stevenson's Grocery on Lexington Avenue in Thomasville. He testified in substance: Defendant called him and asked him if he would buy about two thousand pounds of meat. She asked him what he could get for it, and he said he could not say until he saw the meat. She asked him if he could give her any idea and told him it was Chatham brand. She asked him if he could get 25¢ a pound for it. She wanted to sell him sausage, weiners, and bologna, and he could not buy that combination from Chatham Foods that cheap. He told her to call him back about two or three o'clock. She subsequently called him back, and he told her not to bring the meat until seven or eight o'clock, because he was too busy. When she came with the meat about seven or eight o'clock, she did not have all of it because she could not get all of it in the car. There was a man with her, but he did not see who it was. Mrs. Tilley wanted to see him outside. He went outside with her and saw some of the meat in the back seat of a Mustang car. She told him that was not all of it, that she could not get a truck or something and they would have to bring the rest later. Sycamore sausage was in the car and some other meat with a Chatham brand. Before defendant came in the store, Mr. Poole, the sheriff, and Mr. Stamey, a lieutenant detective on the Thomasville police force, came in the market and Stamey told him that Poole was going to work there, and Poole put on an apron and went to work. He does not know who notified the police officers. Poole was working in the store when this unknown man came in and told him that defendant was at the car with the meat. As far as he knows, the store did not buy any of the meat. Defendant told him that someone else had the meat and that it was not her meat.

Russell Poole on 22 July 1966 was working in the Chatham County sheriff's department as a deputy sheriff. He had been a deputy sheriff for about 19 years. He went to Stevenson's Grocery on 22 July 1966 as the result of information received by him that there would be some Chatham Foods meats delivered to it. He went to the Thomasville police department and contacted Lieutenant Stamey of the detective division. They went to Stevenson's Grocery and contacted Mr. Barbee with reference to the meat that defendant was trying to sell to him. After going to the grocery store, he went back to the Thomasville police department, waited a couple of hours, and returned to Stevenson's Grocery, put on a white coat, went back to the meat department as a meat cutter, and waited until 7:20 p.m. At 7:20 p.m. Mr. Foster came in the store to the meat counter and told Mr. Barbee that Mary Ann Hall Tilley wanted to

see him out back. He, Mr. Barbee, and Mr. Foster went out the back door where there was a blue Mustang automobile parked and defendant was sitting under the steering wheel. In the back seat he could see several boxes bearing the Chatham Foods brand labels — sausages, weiners, etc. He later took possession of the meat, which amounted to over eight hundred pounds. The meat was located in. the back seat and in the trunk of the Mustang. After he observed the Chatham meats, he advised Foster and defendant that he was an officer and that they were under arrest for receiving stolen goods. He and Lieutenant Stamey got in the car with defendant and proceeded to the Thomasville police department. Foster was placed in another car and taken there also. Lieutenant Stamey advised de-· fendant of her constitutional rights as laid down in *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 10 A.L.R. 3d 974. After he had testified that Lieutenant Stamey had warned defendant of her constitutional rights, Mr. Horton objected and asked to qualify the witness, and the jury was excused from the courtroom. After the jury returned to the courtroom Poole testified, without objection, as follows:

> "After Lt. Stamey had advised Mrs. Tilley of her constitutional rights, she stated that a man whom she did not name brought the meat to her house; she was selling the meat for him; she was trying to get the money to pay off some checks she had. She stated she had some of the meat at her house that she had kept for her own use. She did not name the man that brought the meat to her house. . . . I found 493 pounds. The types of meat were Sycamore franks, Sycamore smoked sausage, Cardinal franks, air-dried sausage, pork sausage, Cardinal franks, smoked sausage, smoked picnics and Sycamore bologna. It was all Chatham brand meats."

Poole subsequently turned over the meat to Mr. Jack Brooks, sales manager of Chatham Foods, Inc. Poole testified further as follows on direct examination, without objection:

> "After Mr. Brooks received the meat, I and Sheriff Don Whitt, Chief of Police, J. S. Moody, and Mrs. Tilley and Mr. Foster, returned to Siler City. They were given a hearing before a Justice of the Peace, A. M. Stone, and placed under bond. At the hearing before the Justice of the Peace Mrs. Tilley stated that she got the meat from a Wilson Packing Company salesman named Joe Johnson; that he delivered it to her house in a 1961 blue Plymouth; that he at the time was supposed to have rented a truck so that she could bring the two thousand pounds

in one load; that he was unable to get a truck so therefore she had to bring part of it at the time and was aiming to make three loads of it; that Mr. Johnson advised her that his wife was mad at him and he could not stay and had to go on back home.

"She stated that she knew the meat was stolen, that she was just trying to get enough money to pay off the checks she had at that time in High Point. Subsequently, I tried to locate a Joe Johnson who worked at the Wilson Packing Company. I did not find him, nor did I find a 1961 blue Plymouth."

John W. Emerson, Jr., is the sheriff of Chatham County. He testified in substance: The stolen truck was later found beside Highway #220 about five miles north of Asheboro going toward High Point. When the truck was found, there were a couple boxes of chicken or turkey necks in the truck. He saw the defendant later in the Thomasville police station. He advised her of her constitutional rights. He asked her if Lieutenant Stamey had advised her of her constitutional rights, and she said that he had. He again advised her of her rights before he asked any questions. The sheriff testified without any objection as follows:

"Mrs. Tilley said she had gotten the meat from a man driving a blue Plymouth, a 1960 or 1961 model. She did not state who this man was and she said at that time she knew something was wrong. I asked if she knew the meat was stolen and she said that she knew something was wrong with it."

Later defendant came to his office in Chatham County of her own volition and said she wanted to talk to him. She stated at this time in substance that the person driving the 1960 or 1961 blue Plymouth was a man by the name of Charlie Jones, a white man about 45 years of age. He had contacted her on 22 July 1966 and stated that a Joe Johnson, a salesman from Wilson Packing Company in High Point, had about two thousand pounds of meat, and he asked her if she knew someone who could use it. She said that Jones told her he wanted 25¢ a pound for it and that she could have half of it for selling it. Defendant said that she told Jones that she knew something was wrong about the meat, and Jones told her to try to sell it and she contacted Bill Barbee at Stevenson's Grocery in Thomasville. On redirect examination Sheriff Emerson, without objection, testified as follows: "Mrs. Tilley said she knew something was wrong with the meat and I asked her if she knew it was stolen and she said yes, that she knew something was wrong with it."

Verlo Stamey is a lieutenant detective with the police force of Thomasville. He knew the defendant. He received information about some meat to be delivered at Stevenson's Grocery on the afternoon of 22 July 1966. As a result of that information, he notified the Chatham County officers. He testified: "I advised Mrs. Tilley of her rights, first there at the store along with Sheriff Poole and myself in the car. I later did it again at the station. I stated to Mrs. Tilley at the car before she left the car, I said, 'Mrs. Tilley, you know your rights.' She said, 'Yes, I know my rights,' and I said, 'I will have to advise you of your rights now.'" He then again advised her of her rights.

The defendant offered evidence tending to show the following facts: She had been formerly in the restaurant business for about sixteen or seventeen years. She received a telephone call from a Mr. Charles Jones who asked her if she was still in the restaurant business. He said he was with Wilson Company and that the company had some surplus meat and he thought maybe she could use some in her restaurant. She replied that she was no longer operating a restaurant but she might know someone who could use it and for him to call her back later. She was at first suspicious about the low price of 20¢ or 25¢ per pound, but after finding out that it consisted of weiners, bologna, etc., she was no longer suspicious. She thought that the meat was from the Wilson Company; she did not know it was Chatham brand meat. She made no statement to Sheriff Emerson or Deputy Sheriff Poole that she knew the meat was stolen. She did state to Sheriff Emerson that she thought something was wrong with the meat when Mr. Jones first called her, but when she found out that the meat was weiners, bologna, etc., instead of beef her suspicions were allayed. She does not know what happened to the rest of the meat. She understood Jones was an employee of Wilson Company.

The essential elements of the offense of receiving stolen goods are the receiving of goods which had been feloniously stolen by some person other than the accused, with knowledge by the accused at the time of the receiving that the goods had been theretofore feloniously stolen, and the retention of the possession of such goods with a felonious intent or with a dishonest motive. Receiving stolen goods knowing them to have been stolen is a statutory offense. G.S. 14-71. The criminality of the action denounced by the statute consists in receiving with guilty knowledge and felonious intent goods which previously had been stolen. *S. v. Yow,* 227 N.C. 585, 42 S.E. 2d 661; *S. v. Brady,* 237 N.C. 675, 75 S.E. 2d 791; *S. v. Collins,* 240 N.C. 128, 81 S.E. 2d 270; *S. v. Neill,* 244 N.C. 252, 93 S.E. 2d 155.

The State's evidence considered in the light most favorable to it and giving it the benefit of every reasonable inference to be deduced therefrom would permit a jury to find the following facts: (1) That on the night of 21 July 1966 a truck load of frankfurters, sausage, picnic hams, and bologna was feloniously stolen from the premises of Chatham Foods, Inc., the said truck load of meat being the property of Chatham Foods, Inc.; (2) that the next day 980 or 990 pounds of this stolen meat of the value of $154.39 bearing the Chatham Foods label were in defendant's possession in a Mustang automobile driven by her, and she was trying to sell it at a price below the market to Stevenson's Grocery in Thomasville; (3) that the defendant, after having been warned of her constitutional rights under the *Miranda* decision, told John W. Emerson, Jr., the sheriff of Chatham County, Deputy Sheriff Poole, and a justice of the peace, A. M. Stone, that she knew the meat was stolen and that she was just trying to get enough money to pay off the checks she had at that time in High Point; and (4) that the defendant received this stolen meat with a felonious intent or with a dishonest motive. In our opinion, and we so hold, the State's evidence was sufficient to carry the case to the jury, and the court correctly overruled the motion of defendant for a judgment of compulsory nonsuit.

The undisputed evidence in the record is that the value of the stolen property in possession of defendant was $154.39. Judge Mc-Kinnon charged the jury as follows:

"Members of the Jury, the charge here placed charged the receiving of stolen goods of a value of approximately $2,500.00. The Court has ruled that the case should be submitted to you only upon the lesser included offense of receiving stolen goods having a value not exceeding $200.00 knowing them to have been stolen. So, the only distinction between such charges in so far as the value of the goods in question is concerned relates to the punishment and the elements of the offense are no different regardless of the amount of property which may be involved.

*        *        *

"As I have said, Gentlemen, the charge now placed against the defendant is receiving stolen goods of a value not exceeding $200.00 knowing them to have been stolen so you will say whether she is guilty or not guilty of that offense."

The verdict as shown by the court records certified under the hand and seal of the clerk of the Superior Court of Chatham County as set forth in an addendum to the record was, "The jury returns a verdict of guilty as charged." Every feature of the trial discloses

that both the State and the defendant considered this criminal prosecution as relating solely to whether the defendant was guilty of receiving with a felonious intent stolen goods of the value of $154.39 knowing them to have been stolen. The evidence and the judge's charge do not refer to any property of a greater value than $200. There can be no doubt that the jury convicted the defendant of the misdemeanor of receiving stolen property well knowing at the time of the receiving that it had been theretofore feloniously stolen and carried away, and receiving it with such knowledge and with a felonious intent.

What was said in *S. v. Thompson,* 257 N.C. 452, 126 S.E. 2d 58, is controlling here:

> "A verdict, apparently ambiguous, 'may be given significance and correctly interpreted by reference to the allegations, the facts in evidence, and the instructions of the court.' *S. v. Smith,* 226 N.C. 738, 40 S.E. 2d 363; *S. v. Beam, supra* [255 N.C. 347, 121 S.E. 2d 558]. 'The verdict should be taken in connection with the charge of his Honor and the evidence in the case.' *S. v. Gilchrist,* 113 N.C. 673, 676, 18 S.E. 319, and cases cited; *S. v. Gregory,* 153 N.C. 646, 69 S.E. 674; *S. v. Wiggins,* 171 N.C. 813, 89 S.E. 58. When the warrant, the evidence and the charge are considered, it appears clearly the jury, by their verdict, found defendant guilty of operating a motor vehicle on the public street of Graham while under the influence of intoxicating liquor."

Applying the rule of law stated in the *Thompson* case, it is manifest that the verdict is sufficient and valid and will bar a further criminal prosecution for the offense of receiving stolen goods knowing them to have been stolen from the Chatham Foods, Inc., on 22 July 1966. The punishment of not less than 18 months nor more than 24 months was the punishment for a misdemeanor. G.S. 14-72.

In the trial below we find

No error.