STATE OF NORTH CAROLINA v. JOE EDWARD HAMPTON, JR.

No. 121

(Filed 24 January 1978)

### 1. Criminal Law § 73.2— what witness told police—testimony not hearsay

In this homicide prosecution, a witness's testimony as to what he had told police officers when they first questioned him was not inadmissible as hearsay where the testimony was not offered to prove the truth of the declarant's statement but to explain his action in originally making a false statement to the police.

### 2. Criminal Law § 126.4— refusal to accept verdict

In a criminal case it is only when a verdict is not responsive to the indictment or the verdict is incomplete, insensible or repugnant that the judge may decline to accept the verdict and direct the jury to retire and bring in a proper verdict.

### 3. Criminal Law § 124.2— interpretation of verdict

A verdict may be given significance and a proper interpretation by reference to the indictment, the evidence and the instructions of the court, and in making such interpretation, nonessential words which do not cast doubt upon the character of the verdict may be treated as surplusage.

### 4. Criminal Law §§ 124.2, 126.2— verdict of "guilty as charged· in the first degree"— clerk's polling of jury

The trial court in a homicide case did not err in accepting a verdict of "guilty as charged in the first degree" since it is clear that the jury intended to find defendant guilty of murder in the first degree when the indictment,

evidence and charge are reasonably considered in connection with the verdict returned. Nor did the clerk dictate or suggest what the jury's verdict should be when, in polling the jury, the clerk asked the jurors whether they had returned a verdict of guilty of murder in the first degree and whether they still assented thereto.

### 5. Criminal Law § 126.1— polling of jury—assent by nodding head

There is no merit in defendant's contention that the verdict was not unanimous because two of the jurors merely nodded their heads in response to the inquiry of the clerk during the polling of the jury.

### 6. Criminal Law § 86.5— cross-examination of defendant—prior bad conduct

The trial court in a homicide case did not abuse its discretion in permitting the district attorney to ask defendant on cross-examination whether he had stolen an automobile, had broken into a school and stolen food therefrom, had stolen $250 worth of beer from a business, and had assaulted a certain person with a stick where nothing in the record indicates that the questions were asked in bad faith.

### 7. Homicide § 30.2— first degree murder case—failure to submit manslaughter

The trial court in this first degree murder case did not err in failing to instruct the jury on the lesser included offense of voluntary manslaughter where the State's evidence tended to show that deceased withdrew from an assault on defendant's companion when defendant struck deceased one blow with an automobile jack, deceased threatened to get the police and defendant resumed the assault on him by felling him with the jack and striking deceased about the head and face with the jack as deceased lay in a gully, and defendant verbally indicated an intent to kill deceased while striking him with the jack, and where defendant's evidence was to the effect that he never assaulted the deceased in any manner but that his companion was the killer.

### 8. Homicide § 25.2— first degree murder—failure to include premeditation and deliberation in one portion of the charge

In this prosecution for first degree murder, the trial court did not err in failing to include premeditation and deliberation in a portion of the charge in which the court instructed that the State had to prove beyond a reasonable doubt that defendant "intentionally and with malice" beat deceased with an automobile jack where a contextual reading of the charge shows that the trial judge chose to array his instructions so that each element of first degree murder, including the elements of premeditation and deliberation, would be separately defined and explained, the questioned portion of the charge was part of the court's charge on the element of malice, and the court gave a clear and concise definition of the crime of murder in the first degree which contained each previously defined and explained element.

APPEAL by defendant from *Canaday, J.,* at the June, 1977, Criminal Session of WARREN Superior Court.

Defendant was charged in a bill of indictment with the first degree murder of Cleveland Alonzo Wilson. Defendant entered a plea of not guilty.

Will McClean Davis, the State's principal witness, testified to the effect that on the night of 21 January 1977, he met defendant and Cleveland Wilson at the Starlight Palace, a nightspot in Warren County. Defendant told the witness that he wanted Wilson to drive them to Richmond but had never discussed it with Wilson. At defendant's request, he told Wilson that some girls would meet them at a nearby road and sometime after midnight they drove to a wooded area in Wilson's car where they drank wine and smoked marijuana. After a while, Wilson accused Davis of lying about the girls and ordered him out of the car. He started to walk away, but Wilson jumped on him and knocked him to the ground. Davis then testified:

> . . . While he was on top of me Joe hit him with a jack. I am talking about a piece of iron used for lifting a car so you can change a tire.
>
> After Joe Hampton hit Cleveland Wilson with the jack Cleveland got up off of me. Cleveland said he was going to get me and Joe, said he was going to get the cops. That is when Joe hit him again with the same piece of iron. After he hit him several times then he took and put him in the car. I don't know exactly how many times he hit him. I was standing on the outside of the car.
>
> I said to Joe Hampton "Let's put him in the car and turn him loose in Richmond." Joe said we had started and we had to finish it. He was hitting him towards the head. Cleveland Wilson was laying on the ground in a gutter like, a gully. I couldn't tell whether his face was up, but he was laying in gully and I saw Joe Hampton hitting him about the head.

After robbing Wilson's body, they placed it in the trunk of the automobile and drove to Lake Gaston where they threw the body into the lake. The two men then proceeded to Richmond, Virginia, where they remained until 22 January. On 23 January, defendant called Davis and told him that he had been questioned by the police concerning Wilson's disappearance and directed him to tell the police that Wilson had carried them to the Greystone Club on 21 January, and they had not seen him since. Davis com-

plied with these instructions and on the following night told defendant that he had done so. On 24 January, Davis was arrested and at that time he told the police that defendant had killed Wilson in nearby Sherwood Forest. He agreed to testify against defendant in exchange for a reduction of the first degree murder charge to voluntary manslaughter and a commitment that he would receive a sentence of twenty years.

The State offered the testimony of police officers with regard to their visits to the alleged scene of the crime and concerning the recovery of Wilson's body from Lake Gaston on 27 February 1977.

Dr. Page Hudson, the Medical Examiner for the State of North Carolina, stated that in his opinion Wilson's death was caused by a beating about the head and face.

The State also offered expert testimony tending to show that the deceased's blood type was AB, EAP, Group B, a rare blood type which normally occurs in only two or three percent of the population. The same type blood was found on the bumper jack allegedly used in the killing and on a leather jacket found near the scene where the killing supposedly took place. There was further testimony by a fingerprint expert that defendant's fingerprints matched latent prints of right and left palmprints which were taken from the trunk area of the automobile belonging to deceased.

Defendant testified in his own behalf and stated that he, Davis, and Wilson left the Starlight Palace and went to the Greystone Restaurant located near Henderson where Davis and Wilson left him. Sometime later, Davis returned to the Greystone Restaurant and told defendant that he and Wilson had engaged in a fight and that he had killed Wilson. He accompanied Davis to Gaston Lake where Davis threw the body into the lake. They then drove to Richmond in deceased's automobile.

The jury returned a verdict of "guilty as charged in the first degree." The trial judge imposed a sentence of life imprisonment.

*Rufus L. Edmisten, Attorney General, by Jane Rankin Thompson, Associate Attorney, for the State.*

*Frank Banzet for defendant appellant.*

BRANCH, Justice.

[1]  Defendant contends that the trial judge committed prejudicial error by permitting the witness Davis to testify as to what he told the police. The witness was asked, "What did you tell the officers?" He replied, "I told them what Joe had told me to tell them, that Cleveland Wilson had took us to Greystone and left us." Defendant contends that this is hearsay evidence. We disagree.

In 1 Stansbury's North Carolina Evidence, Section 138, pp. 459-460 (Brandis Rev. 1973), it is stated:

> . . . [W]henever the assertion of any person, other than that of the witness himself in his present testimony, is offered to prove the truth of the matter asserted, the evidence so offered is hearsay. If offered for any other purpose, it is not hearsay.

The challenged evidence was not offered to prove the truth of the declarant's statement but to explain his action in originally making a false statement to the police.

We also note that just prior to the time this evidence was elicited, the witness had testified without objection that defendant ". . . told me to tell them [the officers] that Cleveland took me and him to Greystone and put us off and we ain't seen him since. . . ." It is well established in this jurisdiction that when evidence is admitted over objection but the same evidence has theretofore or thereafter been admitted without objection, the benefit of the objection is ordinarily lost. *State v. Sanders*, 288 N.C. 285, 218 S.E. 2d 352 (1975), *cert. denied*, 423 U.S. 1091 (1976); *State v. Van Landingham*, 283 N.C. 589, 197 S.E. 2d 539 (1973).

[4]  Defendant argues that the trial judge erred in accepting the verdict.

The record discloses the following proceedings when the jury returned its verdict:

> THE COURT: Ladies and gentlemen, have you reached a verdict in the case of State versus Joe Edward Hampton, Jr.?
>
> FOREMAN: Yes, sir.
>
> THE COURT: All right. Take the verdict, Madam Clerk.

MADAM CLERK: Mr. Foreman and members of the jury, how say you: Is the defendant guilty of murder of the first degree, the offense with which he stands charged, or is he guilty of murder in the second degree, or is he not guilty?

FOREMAN: We reached a verdict he was guilty as charged in the first degree.

MADAM CLERK: Is this your verdict, so say you all?

FOREMAN: All of us.

MR. FRANK BANZET: Your Honor, I would like to have the jury polled.

THE COURT: All right. Poll the jury.

MADAM CLERK: John T. Allen.

JUROR ALLEN: Yes, ma'am.

MADAM CLERK: You as foreman has [sic] returned for your verdict that the defendant is guilty of murder in the first degree. Is this your verdict?

JUROR ALLEN: Yes, ma'am.

MADAM CLERK: And do you still assent thereto?

JUROR ALLEN: Yes, ma'am.

All the remaining jurors verbally answered the same questions in the affirmative except for jurors Austin and Boyd who nodded their heads when the two questions were directed to them.

Defendant first avers that the verdict was not responsive to the indictment, and, therefore, the court should have refused to accept it and should have directed the jury to reach a proper verdict.

[2, 3] A verdict is a substantial right and is not complete until accepted by the court. *State v. Rhinehart*, 267 N.C. 470, 148 S.E. 2d 651 (1966). The trial judge's power to accept or reject a verdict is restricted to the exercise of a limited legal discretion. *Davis v. State*, 273 N.C. 533, 160 S.E. 2d 697 (1968). In a criminal case, it is only when a verdict is not responsive to the indictment or the verdict is incomplete, insensible or repugnant that the judge may decline to accept the verdict and direct the jury to retire and

bring in a proper verdict. Such action should not be taken except by reason of necessity. If the verdict as returned substantially finds the question so as to permit the court to pass judgment according to the manifest intention of the jury, it should be received and recorded. A verdict may be given significance and a proper interpretation by reference to the indictment, the evidence, and the instructions of the court. *State v. Tilley*, 272 N.C. 408, 158 S.E. 2d 573 (1968); *State v. Thompson*, 257 N.C. 452, 126 S.E. 2d 58 (1962), *cert. denied*, 371 U.S. 921 (1962). In making such interpretation, non-essential words which do not cast doubt upon the character of the verdict may be treated as mere surplusage. *State v. Perry*, 225 N.C. 174, 33 S.E. 2d 869 (1945).

[4]  Here, in his final mandate to the jury and throughout the charge, the trial judge made it clear that the jury might find defendant guilty of murder in the first degree as charged in the bill of indictment, guilty of the lesser included offense of murder in the second degree, or not guilty. The only possible verdict submitted which contained the language "in the first degree" was the crime charged in the bill of indictment, to-wit: murder in the first degree. When the indictment, the evidence and the charge are reasonably considered in connection with the verdict returned, it is clear that the jury intended to find, and did find, defendant guilty of murder in the first degree. Nevertheless, defendant contends that the clerk coerced a verdict by the language used during the polling of the jury. A contention similar to this was made in the case of *Davis v. State*, supra, and in rejecting this contention the Court reasoned that the record did not disclose that the clerk dictated or suggested what the verdict should be but merely addressed an inquiry to the jury. So it was here.

[5]  Finally, by this assignment of error, defendant contends that the verdict was not unanimous because two of the jurors merely nodded their heads in response to the inquiry of the clerk.

In *State v. Sears*, 235 N.C. 623, 70 S.E. 2d 907 (1952), and in *State v. Wilson*, 218 N.C. 556, 11 S.E. 2d 567 (1940), this Court found it to be unobjectionable when the jurors nodded their assent to questions concerning their verdict. However, defendant points to the fact that instant case differs substantially from *Sears* and *Wilson* because this record does not disclose that the two jurors nodded in *assent*. He argues that the word "nod" encompasses an involuntary motion caused by drowsiness. This

argument is without merit. It would strain one's credulity to believe that jurors who, under the supervision of the trial judge, were in the process of being individually questioned as to their vote and continued assent to a verdict of guilty of first degree murder would be "napping." The existence of two dozing jurors at this crucial point in the proceedings is refuted by the very fact that able defense counsel, the district attorney, and the trial judge failed to take note of their condition and demand clear, verbal replies to the questions posed by the clerk.

For reasons stated, this assignment of error is overruled.

[6] We next turn to defendant's contention that the trial judge erred by permitting the district attorney to question him concerning prior unrelated acts. On cross examination by the district attorney, defendant was asked whether he had stolen a 1972 Chevrolet automobile, whether he had broken into a school and stolen food therefrom, whether he had stolen $250.00 worth of beer from the Starlight Palace, and whether he had assaulted Carlton Smith with a stick. Defendant's reply to each of these questions was in the negative with the exception of his admission that he assaulted Smith.

In *State v. Williams*, 279 N.C. 663, 675, 185 S.E. 2d 174, 181 (1971), Chief Justice Bobbitt, speaking for the Court, stated: "It is permissible, for the purposes of impeachment, to cross examine a witness, including the defendant in a criminal case, by asking disparaging questions concerning collateral matters relating to his criminal and degrading conduct [citations omitted]. Such questions relate to matters *within the knowledge of the witness*, not to accusations of any kind made by others. We do not here undertake to mark the limits of such cross examination except to say generally (1) the scope thereof is subject to the discretion of the trial judge, and (2) the questions must be asked in good faith." [Emphasis in the original.] *Accord, State v. Mack*, 282 N.C. 334, 193 S.E. 2d 71 (1972); *State v. Griffin*, 201 N.C. 541, 160 S.E. 826 (1931); *State v. Colson*, 194 N.C. 206, 139 S.E. 230 (1927).

We find nothing in this record which indicates that the questions were asked in bad faith or that the trial judge abused his discretion in permitting such examination of defendant. We, therefore, hold that the trial judge did not commit prejudicial error in these rulings.

**[7]**    Defendant next assigns as error the failure of the trial judge to instruct the jury on the lesser included offense of voluntary manslaughter.

Unquestionably, a defendant is entitled to have all permissible verdicts arising on the evidence submitted to the jury under proper instructions, and the trial judge must submit the question of a defendant's guilt of a lesser included offense when there is evidence of guilt of such crime of lesser degree. The presence of evidence from which the jury could find that such included crime of lesser degree was committed is the determinative factor. "Mere contention that the jury might accept the State's evidence in part and might reject it in part will not suffice." *State v. Hicks,* 241 N.C. 156, 160, 84 S.E. 2d 545, 547 (1954). *See also, State v. Jones,* 249 N.C. 134, 105 S.E. 2d 513 (1958). Thus, when there is no evidence to show the commission of such crime of lesser degree, the court should not charge on the lesser included offense. *State v. Harrington,* 286 N.C. 327, 210 S.E. 2d 424 (1974); *State v. Griffin,* 280 N.C. 142, 185 S.E. 2d 149 (1971); *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755 (1971), *cert. denied,* 414 U.S. 874 (1973); *State v. Davis,* 242 N.C. 476, 87 S.E. 2d 906 (1955).

Voluntary manslaughter (a lesser included offense of first degree murder) is the unlawful killing of a human being without malice, expressed or implied, and without premeditation or deliberation. *State v. Wynn,* 278 N.C. 513, 180 S.E. 2d 135 (1971); *State v. Street,* 241 N.C. 689, 86 S.E. 2d 277 (1955). One who kills a human being while under the influence of passion or in the heat of blood produced by adequate provocation is guilty of manslaughter. *State v. Wynn, supra; State v. Cooper,* 273 N.C. 51, 159 S.E. 2d 305 (1968).

"Malice is not only hatred, ill-will, or spite, as it is ordinarily understood—to be sure that is malice—but it also means that condition of mind which prompts a person to take the life of another intentionally without just cause, excuse, or justification. *S. v. Banks,* 143 N.C. 652. It may be shown by evidence of hatred, ill-will, or dislike, and it is implied in law from the killing with a deadly weapon; and a pistol or a gun is a deadly weapon. *S. v. Lane,* 166 N.C. 333."

*State v. Benson*, 183 N.C. 795, 799, 111 S.E. 869, 871 (1922), *overruled on other grounds; State v. Phillips*, 264 N.C. 508, 142 S.E. 2d 337 (1965).

In instant case, the State's evidence discloses that after defendant struck deceased one blow with the jack, Wilson withdrew from the assault on Davis. Nevertheless, when deceased threatened to "get the cops," defendant resumed his assault upon the victim by felling him with the jack and continuing his assault by striking deceased about the head and face with the jack as deceased lay prone in a gully. As defendant continued to inflict the head wounds which proved to be mortal, he verbally indicated an intent to kill deceased. The State's evidence was sufficient to raise reasonable inferences of an unlawful killing with malice, perpetrated after premeditation and deliberation. Defendant's evidence was to the effect that he never assaulted deceased in any manner and that, in fact, the witness Davis was the killer. This evidence did not tend to dispel malice but only tended to support the possible verdict of not guilty. We, therefore, hold that there was no evidence to support the lesser included offense of manslaughter and that the trial judge correctly submitted as possible verdicts: guilty of murder in the first degree, guilty of murder in the second degree, and not guilty. We further note that even had there been evidence of the lesser included offense of manslaughter, the court's failure to submit this lesser included offense would not have amounted to prejudicial error since the jury returned a valid verdict of guilty of murder in the first degree under proper instructions which also included a proper charge on the lesser included offense of second degree murder. *See, State v. Bunn*, 283 N.C. 444, 196 S.E. 2d 777 (1973); *State v. Freeman*, 275 N.C. 662, 170 S.E. 2d 461 (1969).

For reasons stated, this assignment of error is overruled.

[8] Defendant's assignment of error number 4 is as follows:

Did the trial court err in omitting from the jury charge the "with deliberation and premeditation" elements of the crime of murder in the first degree?

In the initial portion of his instructions on murder in the first degree, the trial judge charged:

Now, murder in the first degree is defined as the unlawful killing of a human being with malice and with premeditation and deliberation.

Murder in the second degree is the unlawful killing of a human being with malice, but without premeditation and deliberation.

Now, in order to warrant the conviction of the defendant of the crime of murder in the first degree, the State must satisfy you from the evidence beyond a reasonable doubt that the defendant intentionally and with malice beat the decedent Cleveland Alonzo Wilson about his head and face with an automobile jack.

The court then defined malice and continued seriately to give, define, and explain the additional elements of the crime including intent to kill, malice, proximate cause, premeditation and deliberation. After each element of the crime had been defined and explained, the court in its mandate to the jury on first degree murder charged:

So I instruct you ladies and gentlemen with respect to the crime of murder in the first degree that if the State has satisfied you from the evidence beyond a reasonable doubt, the burden being upon the State so to do, that on or about the 22nd day of January, 1977, the defendant Joe Edward Hampton, Jr. intentionally beat Cleveland Wilson about his face and head with an automobile jack thereby proximately causing the death of Cleveland Wilson, and that the defendant Joe Edward Hampton, Jr. intended to kill the said Cleveland Wilson, and that he, the defendant Hampton, acted with malice, and that he acted after premeditation and deliberation, it would be your duty if the State has so satisfied you in each of these respects to return a verdict of guilty of murder in the first degree.

The rules that there are no stereotyped forms of instructions and that a charge must be considered contextually as a whole are now so firmly established that citation of authority is not required. Here a contextual reading of the charge clearly shows that the trial judge chose to array his instructions so that each element of the crime of first degree murder would be separately

defined and explained. He then gave a clear and concise definition of the crime of murder in the first degree which contained each previously defined and explained element. We, therefore, disagree with defendant's contention that the first above-quoted portion of the charge was incorrect. It was a proper part of a contextually correct charge. The trial judge's instructions as a whole presented the law of the case in such a manner that there is no reasonable ground to believe that the jury was misled or misinformed by his instructions.

In the trial below, we find

No error.