IN THE SUPREME COURT OF NORTH CAROLINA

No. 505PA20

Filed 6 April 2023

STATE OF NORTH CAROLINA

v.

RAYQUAN JAMAL BORUM

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, No. COA19-1022, 2020 WL 6437413 (N.C. Ct. App. Nov. 3, 2020), vacating a judgment entered on 8 March 2019 by Judge Gregory R. Hayes in Superior Court, Mecklenburg County, and remanding for resentencing. This matter was calendared for argument in the Supreme Court on 7 February 2023 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Joshua H. Stein, Attorney General, by Caden William Hayes, Assistant Attorney General, for the State-appellant.*

*Meghan Adelle Jones for defendant-appellee.*

EARLS, Justice.

This case requires us to determine whether, under all of the circumstances, the jury's verdict at trial was ambiguous as to what kind of malice supported the second-degree murder charge.

"Before 2012[,] all second-degree murders were classified at the same level [of severity] for sentencing purposes." *State v. Arrington*, 371 U.S. 518, 522 (2018). In

2012, however, the legislature amended North Carolina's murder statute to classify second-degree murders according to varying degrees of severity based on the level of culpability with which an offender acted. *See* Act of June 28, 2012, S.L. 2012-165, § 1, 2011 N.C. Sess. Laws (Reg. Sess. 2012) 781. Consequently, under the amended statute, most kinds of second-degree murder are classified at the Class B1 felony level. N.C.G.S. § 14-17(b) (2021). But when it is determined that a criminal defendant acted with depraved-heart malice, meaning the individual engaged in "an inherently dangerous act or omission, done in such a reckless and wanton manner as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief," second-degree murder is classified as a Class B2 felony. N.C.G.S. § 14-17(b)(1).

Defendant Rayquan Jamal Borum was convicted of second-degree murder in March 2019. The jury indicated on the verdict sheet that Mr. Borum acted with depraved-heart malice in addition to the two other forms of malice recognized in North Carolina, and the trial court sentenced him for a Class B1 felony. This appeal concerns whether Mr. Borum should have been sentenced at the lower B2 felony level, given the jury's conclusion that he acted, in part, with depraved-heart malice. Based on our precedents which establish that whether a verdict is unambiguous depends on all of the circumstances present in a case, including the indictment, the evidence, and the instructions of the trial court, *see State v. Abraham*, 338 N.C. 315, 356 (1994), we hold that under the circumstances of this particular case, the jury's completed verdict

form was not ambiguous and the trial court properly sentenced Mr. Borum at the Class B1 level.

## I.    Background

On 21 September 2016, Mr. Borum shot and killed Justin Carr during a protest of the shooting of Keith Lamont Scott. At the time of the incident, witnesses heard a gunshot and subsequently saw Mr. Borum holding a gun before he ran away from the crowd. Witnesses then observed Mr. Carr lying on the ground in a pool of blood. Mr. Carr died the next day. Mr. Borum was indicted for Mr. Carr's murder on 3 October 2016. He was charged with first-degree murder and possession of a firearm by a felon.

Mr. Borum was tried before a jury beginning on 11 February 2019 in the Superior Court, Mecklenburg County, before the Honorable Gregory R. Hayes. During the jury charge conference, the court explained the three theories of malice that could support a murder conviction: actual malice, "condition of mind" malice, and "depraved-heart" malice. The trial court provided the jury with a special verdict form to identify which theories of malice it found, if any. The verdict form again defined each form of malice and instructed the jury, "IF YOU FIND THE DEFENDANT GUILTY OF SECOND DEGREE MURDER YOU MUST UNANIMOUSLY FIND ONE OR MORE [FORMS OF MALICE] BELOW."

The jury found Mr. Borum guilty of possession of a firearm by a felon and second-degree murder. On the verdict sheet, the jury found that all three forms of malice supported the conviction. Upon reading the verdict in open court, the trial

court confirmed with the jury that it was a unanimous verdict.

At sentencing, the State asserted that Mr. Borum should be sentenced for a Class B1 felony, given that the jury found that he acted with actual malice and condition of mind malice. In response, defense counsel argued that Mr. Borum should instead be sentenced in the lower Class B2 range. According to the defense, there was a possibility "that the verdict sheet [was] inconsistent with the actual sentence" because the jury found Mr. Borum acted with not just actual and condition of mind malice but also depraved-heart malice. When a verdict sheet indicates the latter form of malice, the defense argued, second-degree murder should be treated as a Class B2 felony to avoid a verdict that is inconsistent with the verdict sheet.

The trial court rejected the defense's argument and sentenced Mr. Borum to 276 to 344 months in prison for the Class B1 second-degree murder conviction and 14 to 26 months for the possession of a firearm by a felon conviction. The sentences were to be served consecutively, and he was credited with just over two years of time served during pretrial confinement. The defense entered notice of appeal.

Mr. Borum raised several arguments in the Court of Appeals. Relevant here, he argued that the trial court erred by sentencing him for a Class B1 felony rather than a Class B2 felony based on ambiguity in the jury's verdict. *State v. Borum*, No. COA19-1022, 2020 WL 6437413, at *7–9 (N.C. Ct. App. Nov. 3, 2020). The Court of Appeals agreed and remanded the case for resentencing at the Class B2 level, reasoning that "[t]he State presented evidence tending to show multiple malice

theories. As in *Mosley*, evidence presented could support a Class B1 or Class B2 level felony. Also, as in *Mosley*, the jury's verdict was ambiguous because the theories supported different levels of felonies." *Borum*, 2020 WL 6437413, at *8; *see State v. Mosley*, 256 N.C. App. 148 (2017). The Court of Appeals concluded that because the jury's verdict was ambiguous and that "[c]onsistent with [the court's] holding in *Mosley*, ambiguities in the verdict should be construed in favor of Defendant." *Borum*, 2020 WL 6437413, at *9. The State petitioned this case for discretionary review, arguing that the Court of Appeals erred in remanding Mr. Borum's case for resentencing on the second-degree murder conviction as a Class B2 felony. This Court allowed the State's petition for discretionary review on 9 February 2022.

## II.    Analysis

In order to prove that a criminal defendant committed second-degree murder, one of the essential elements the State must prove is malice. *See Arrington*, 371 N.C. at 518 ("Second-degree murder is defined as (1) the unlawful killing, (2) of another human being, (3) *with malice*, but (4) without premeditation and deliberation." (cleaned up) (emphasis added)). In North Carolina, there are three forms of malice: (1) "actual malice, meaning hatred, ill-will or spite;" (2) "that condition of mind which prompts a person to take the life of another intentionally without just cause, excuse, or justification," or condition of mind malice; and (3) "an inherently dangerous act done so recklessly and wantonly as to manifest a mind utterly without regard for

human life and social duty and deliberately bent on mischief," or depraved-heart malice. *Id.* (cleaned up).

Mr. Borum's position that he should have been sentenced for a Class B2 felony is based on N.C.G.S. § 14-17(b)(1). Under subsection 14-17(b), second-degree murder is generally a Class B1 felony. However, where "[t]he malice necessary to prove second degree murder [was] based on an inherently dangerous act or omission, done in such a reckless and wanton manner as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief," second-degree murder is considered a Class B2 felony. N.C.G.S. § 14-17(b) (2021).[1] In practice, this means that "the crime of second-degree murder has two potential classifications, B1 and B2, depending on the facts of the murder," *Arrington*, 371 N.C. at 522, and a defendant who is convicted of second-degree murder and is found to have acted with depraved-heart malice has committed an offense in a lower felony class than a defendant who is found to have acted with one of the other two types of malice.

Relying on subsection 14-17(b)(1), Mr. Borum argues that because the jury found that he acted with all three kinds of malice, including depraved-heart malice, "[u]nder the plain language of Section 14-17(b), the trial court should have sentenced Mr. Borum for second-degree murder as a Class B2 felony." According to Mr. Borum's interpretation of subsection 14-17(b), "a Class B1 sentence is appropriate only where

---

[1] Subsection 14-17(b)(2) provides another exception to the Class B1 sentencing requirement when "[t]he murder is one that was proximately caused by the unlawful distribution of [certain illegal substances]." N.C.G.S. § 14-17(b)(2) (2021).

there are *no facts . . .* that give rise to a Class B2 sentence." Mr. Borum also argues that the jury's verdict was ambiguous. We disagree and hold that when, as here, the jury's verdict unambiguously supports a second-degree murder conviction based on actual malice or condition of mind malice, a Class B1 sentence is required, even when depraved-heart malice is also found.

Given all of the circumstances of this case, the jury's verdict convicting Mr. Borum of second-degree murder was not ambiguous. "A verdict may be given significance and a proper interpretation by reference to the indictment, the evidence, and the instructions of the court." *State v. Hampton*, 294 N.C. 242, 248 (1978); *see also State v. Tilley*, 272 N.C. 408, 416 (1968) ("A verdict, apparently ambiguous, may be given significance and correctly interpreted by reference to the allegations, the facts in evidence, and the instructions of the court." (cleaned up)). While any ambiguity in the verdict is to be construed in favor of the defendant, *Mosley*, 256 N.C. App. at 153, there can be circumstances "[w]hen the indictment, the evidence and the charge are reasonably considered in connection with the verdict returned, it is clear that the jury intended to find, and did find, defendant guilty," *Hampton*, 294 N.C. at 248.

Here, the trial court instructed the jury on the different forms of malice and provided a verdict form that both required the jury to specifically select which forms of malice supported a second-degree murder conviction and explicitly stated that the jury must unanimously find that Mr. Borum acted with the type(s) of malice indicated

on the form. After the jury returned a verdict form finding that Mr. Borum acted with all three kinds of malice, the trial court reviewed the verdict with the jury, confirming that it was the jurors' unanimous verdict. These facts demonstrate that the jury understood its responsibility to unanimously determine each form of malice that supported the second-degree murder conviction, and the trial court took steps to ensure that this task was completed properly.

In support of his contention that the jury's verdict was ambiguous, Mr. Borum relies on the Court of Appeals' decision in *State v. Mosley*, 256 N.C. App. 148 (2017). In *Mosley*, the State charged the defendant with murder and during his trial, introduced evidence supporting that the defendant acted with all three forms of malice. *Id.* at 149–50. Prior to jury deliberations, the trial court provided the jury with a general verdict form, meaning the jury did not have a way to specifically indicate which type of malice supported a second-degree murder conviction. *Id.* at 149, 152–53. The jury ultimately found the defendant guilty of second-degree murder, and the trial court subsequently sentenced him for a Class B1 felony. *Id.* at 149–50.

The Court of Appeals vacated the judgment and remanded for sentencing as a Class B2 felony based largely on the trial court's provision of a general verdict form to the jury.[2] *Id.* at 153. The general verdict form raised the possibility that the jury

---

[2] Additionally, the Court of Appeals' decision was based on the fact that the trial court only described the different forms of malice when instructing on first-degree murder, rather than explaining the distinction while instructing on second-degree murder as well. *See Mosley*, 256 N.C. App. at 149, 153.

only found that the defendant acted with depraved-heart malice, which would require that he be sentenced at the B2 level. As the Court of Appeals explained, "[b]ecause there was evidence presented which would have supported a verdict on second degree murder on more than one theory of malice, and because those theories support different levels of punishment under . . . [N.C.G.S.] § 14-17(b), the verdict rendered in [*Mosley*] was ambiguous." *Id.* Based on the principle that "neither the [Court of Appeals] nor the trial court [wa]s free to speculate as to the basis of [the] jury's verdict," the court concluded that "the verdict should be construed in favor of the defendant." *Id.*; *see also State v. Goodman*, 298 N.C. 1, 16 (1979) ("If the jury's verdict were general, not specifying the theory upon which guilt was found, the court would have no way of knowing what theory the jury used and would not have proper basis for passing judgment."). Mr. Borum argues that *Mosley* is persuasive here because the special verdict sheet the jury received in this case did not differentiate between the Class B1 and Class B2 offenses by including the term "OR" between the different levels of second-degree murder like "it did between first and second-degree murder."

Mosley was correctly decided based on the circumstances presented in that case. However, the trial court in this case submitted a different verdict form that did allow the jury to indicate specifically which form of malice it was finding to have been proven beyond a reasonable doubt. Here, the jury was repeatedly instructed on the different forms of malice, and through a special verdict form, the jury explicitly found that all three forms of malice were present, including the types of malice that require

a Class B1 felony sentence. There is no uncertainty regarding whether the jury's verdict was based only on a single form of malice that requires a lower level of punishment (*i.e.*, depraved-heart malice) or the two other forms that require a higher level of punishment. Thus, the concerns in *Mosley* that led the Court of Appeals to conclude that the jury's verdict was ambiguous are not implicated here.

Next, we must decide whether N.C.G.S. § 14-17(b) requires a Class B2 felony sentence for any second-degree murder conviction in which a jury finds that a criminal defendant acted with depraved-heart malice. According to Mr. Borum, "[N.C.G.S. §] 14-17(b) does not say that a Class B2 sentence shall be imposed when 'the malice to prove second-degree murder is *necessarily* based on depraved-heart malice.'" In his view, under N.C.G.S. § 14-17(b), "a Class B1 sentence is appropriate only where there are *no facts* . . . that give rise to a Class B2 sentence." This reading of the statute is untenably broad.

"The goal of statutory interpretation is to determine the meaning that the legislature intended upon the statute's enactment." *State v. Rankin*, 371 N.C. 885, 889 (2018). "The intent of the General Assembly may be found first from the plain language of the statute, then from the legislative history, the spirit of the act and what the act seeks to accomplish." *State v. Langley*, 371 N.C. 389, 395 (2018) (cleaned up). "The legislative purpose of a statute is first ascertained by examining the statute's plain language." *Correll v. Div. of Soc. Servs.*, 332 N.C. 141, 144 (1992). "Where the language of a statute is clear and unambiguous, there is no room for

judicial construction and the courts must construe the statute using its plain meaning." *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209 (1990).

Subsection 14-17(b) states:

> Any person who commits second degree murder shall be punished as a Class B1 felon, except that a person who commits second degree murder shall be punished as a Class B2 felon in either of the following circumstances:
>
> (1)    The malice necessary to prove second degree murder is based on an inherently dangerous act or omission, done in such a reckless and wanton manner as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief.
>
> (2)    The murder is one that was proximately caused by the unlawful distribution of any opium, opiate, or opioid; any synthetic or natural salt, compound, derivative, or preparation of opium, or opiate, or opioid; cocaine or other substance described in G.S. 90-90(1)d.; methamphetamine; or a depressant described in G.S. 90-92(a)(1), and the ingestion of such substance caused the death of the user.

N.C.G.S. § 14-17(b). Thus, the statute plainly expresses that a person convicted of second-degree murder is only sentenced as a Class B2 felon where the malice *necessary* to prove the murder conviction is depraved-heart malice. The term "necessary" is commonly understood as a condition "[t]hat is needed for some purpose or reason; essential." *Necessary*, Black's Law Dictionary (11th ed. 2019).

Contrary to Mr. Borum's interpretation, this means that a Class B2 sentence is only appropriate where a second-degree murder conviction hinges on the jury's finding of depraved-heart malice. Here, however, depraved-heart malice is not

necessary—or essential—to prove Mr. Borum's conviction because the jury also found that Mr. Borum acted with the two other forms of malice. Put another way, in this case, the verdict does not stand or fall based on the jury's finding of depraved-heart malice. This interpretation is consistent with this Court's decision in *Arrington*, which explained that N.C.G.S. § 14-17(b) "distinguishes between second-degree murders that involve an intent to harm (actual malice or the intent to take a life without justification) versus the less culpable ones that involve recklessness[,]" namely depraved-heart malice. 371 N.C. at 524. As explained, the jury here found that the murder involved "an intent to harm," so the murder necessarily was not "less culpable." *See id.* The plain language of the statute is determinative and forecloses reference to other interpretive tools.

## III.  Conclusion

It is true that "[w]hen a verdict is ambiguous, neither we nor the [lower courts are] free to speculate as to the basis of a jury's verdict, and the verdict should be construed in favor of the defendant." *See Mosley*, 256 N.C. App. at 153; *see also State v. Whittington*, 318 N.C. 114, 123 (1986). But not only was the verdict against Mr. Borum unambiguous, the text of N.C.G.S. § 14-17(b)(1) is plain as well. We therefore reverse the Court of Appeals' decision below and hold that the trial court correctly sentenced Mr. Borum at the Class B1 felony level.

REVERSED.